### In re CARROLL.

[Cite as *In re Carroll* (1997), 124 Ohio App.3d 51.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 97–CA–55.

Decided Nov. 7, 1997.

*William F. Schenck,* Greene County Prosecuting Attorney, and *Suzanne M. Schmidt,* Senior Assistant Prosecuting Attorney, for appellee state of Ohio.

*David E. Gordon* and *John H. Rion,* for appellant Kathleen Carroll.

*Scott W. Somerville* and *Dennis E. Gump,* for appellant Timothy Carroll.

*Stephen Bogenschutz,* Guardian ad litem.

BROGAN, Judge.

In this case, Kathleen and Timothy Carroll appeal from a decision of the Greene County Juvenile Court, denying their motion to terminate the protective supervision of the Greene County Children Services' Board ("CSB") over Hosea, Isaiah, and Samuel Carroll. The Carrolls have previously been before our court in connection with their appeal from a trial court decision requiring Isaiah and Samuel to be educated in a public school setting. See *In re Carroll* (Sept. 20, 1996), Greene App. No. 95–CA–62, unreported, 1996 WL 535302 (finding that the juvenile court did not abuse its discretion in ordering public schooling for the Carrolls' two handicapped children).

Both CSB and the Carrolls noted in their pleadings in the juvenile court that the protective supervision order at issue arose from events beginning in September 1992, when the Carrolls' daughter, Hannah, died as a result of being burned by bleach. CSB filed a complaint in juvenile court on September 22, 1992, alleging that the remaining Carroll children were abused, neglected, or dependent. Subsequently, in November and December 1992, two other children in the Carroll household (Noah and Mollie) died. After being indicted for involuntary manslaughter in connection with Hannah's death, Mr. and Mrs. Carroll pled guilty to medical neglect of Hannah and were placed on probation. Soon after, in March 1993, the Carrolls agreed that the remaining children in their household

were dependent. At that time, legal custody of the children was given to the Carrolls and protective supervision was granted to the CSB. Approximately three months later, another child (Josiah) was found dead in the household. CSB indicates (and the Carrolls do not dispute) that the Greene County coroner has ruled the deaths of Hannah and Josiah to be the result of homicide. In December 1993, CSB obtained legal custody of Samuel and Isaiah, but the CSB and the Carrolls eventually agreed to a return of legal custody to the Carrolls in May 1995, with CSB retaining protective supervision.

On December 12, 1995, the Carrolls filed a motion with the juvenile court, asking that the case be terminated. Shortly thereafter, CSB filed a motion to extend protective supervision. Following a hearing, the trial court denied the Carrolls' motion and sustained CSB's motion. In the entry reflecting these decisions, which was filed on April 3, 1996, the court ordered that its jurisdiction of the case continue. Additionally, the court set a review hearing for October 2, 1996. However, before the review hearing took place, CSB filed a motion for contempt against the Carrolls because they had failed to obey a court order requiring placement of Isaiah and Samuel in a multihandicapped public school program. As a result, the court held the scheduled review hearing earlier, on September 18, and also heard the contempt motion at the same time. The resolution of these issues was that protective supervision was continued, by entry of September 23, 1996. In another entry filed at the same time, the court found that the Carrolls had not kept their children in school as ordered. The court noted that the only reason the Carrolls were not being held in contempt was because they had enrolled the children in the public schools system as of the September 1996 hearing date.

A further review hearing was set for March 31, 1997. Meanwhile, on February 4, 1997, the Carrolls filed another motion to terminate protective supervision. This motion was followed on February 26, 1997 by a CSB motion, asking that the court continue protective supervision. These motions were set for hearing at the time of the scheduled review hearing, but the hearing was subsequently continued until May 5, 1997. At Mrs. Carroll's request, the hearing on the CSB motion to extend protective supervision was continued further, until September 22, 1997. In the meantime, the parties were given an opportunity to file written memoranda on the issue of the Carrolls' motion to terminate protective supervision. Finally, on May 21, 1997, the trial court issued a decision overruling the motion to terminate protective supervision. The Carrolls have now appealed from that decision.

In their appeal, the Carrolls raise the following single assignment of error: The trial court erred when it refused to terminate the protective supervision of CSB as required by R.C. 2151.353(G)(3). The specific statement of the issue, as

framed by the Carrolls, is "[w]hether the application of R.C. 2151.353(G)(3) to the Carroll Family is a prospective application of the statute."

I

Essentially, the argument being made by the Carrolls is that 1996 amendments to R.C. 2151.353(G) should be applied to this case. These amendments would require termination of protective supervision, as the version of the statute currently in effect provides for only two extensions of protective supervision. CSB's response to the Carroll's claim is that the amendments to the statute cannot be applied retroactively.

At the time the complaint against the Carrolls was filed, R.C. 2151.353(G) read as follows:

"Any order for protective supervision issued pursuant to division (A)(1) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, unless the public children services agency or private child placing agency that prepared the child's case plan files a motion with the court requesting the extension for a period of up to six months of the original dispositional order or the extension of a previously granted extension for an additional period of up to six months. Upon the filing of the motion and the court's giving notice of the date, time, and location of the hearing to all parties and the guardian ad litem, the court shall hold a hearing on the motion. If the court determines at the hearing that the extension of the original dispositional order or of any previously granted extension is in the best interest of the child, the court shall issue an order extending the original dispositional order or previously granted extension for an additional period of up to six months."

The above version of the statute has been interpreted as allowing an indefinite number of extensions of protective supervision orders. See *In re Collier* (1993), 85 Ohio App.3d 232, 235–239, 619 N.E.2d 503, 504–508. See, also, Ohio Adm. Code 5101:2–39–30 (indicating there is no statutory limit to the number of extensions of protective orders). In *Collier*, the court commented on this issue as follows:

"R.C. 2151.353(G)'s first sentence provides that any order for protective supervision shall terminate upon the earlier of one year after the date on which the complaint in the case was filed or the child was first placed in shelter care, unless the agency files a motion requesting the extension for a period of up to six months of the original dispositional order 'or the extension of *a* previously granted extension for an additional period of up to six months.' (Emphasis added.) The word 'a' is an indefinite article that denotes a thing not previously

noted or recognized, in contrast with 'the,' which denotes a thing previously noted or recognized. * * * Even the most unlettered persons understand that 'a' is indefinite, but 'the' refers to a certain object. * * * Accordingly, R.C. 2151.353(G), by allowing for the extension of 'a previously granted extension' rather than merely '*the* previously granted extension,' appears to permit additional six-month extensions of protective supervision orders beyond the initial extension of the original protective supervision order. This is further supported by the third sentence in R.C. 2151.353(G), which refers to 'any previously granted extension.' 'Any' means one out of many, *i.e.*, an indefinite number. * * * Therefore, the term 'any' in R.C. 2151.353(G) means that there could be an indefinite number of extensions of protective supervision orders." (Emphasis *sic.*) *Id.* at 237, 619 N.E.2d at 506.

The court in *Collier* found its interpretation compatible with the legislature's purpose in enacting the then-current version of R.C. 2151.353, *i.e.*, the legislature intended to establish maximum time limits for agency custody of children and to prevent "foster care drift." *Id.* at 235, 619 N.E.2d at 505. Although the possibility of indefinite extensions may appear facially inconsistent with maximum time limits, the fact is that in protective supervision situations, parents retain custody of their children. *Id.* As a result, extended supervision would have no impact on the goal of limiting the time an agency could have custody and would not cause "foster care drift," since the children are with their own parents.

The above version of R.C. 2151.353 was in effect at the time the complaint involving the Carroll children was filed, and would permit an indefinite number of extensions of protective supervision, particularly since the juvenile court retains continuing jurisdiction over children for whom it has entered dispositional orders. See R.C. 2151.353(E)(1) and *In re Young Children* (1996), 76 Ohio St.3d 632, 669 N.E.2d 1140. However, effective August 8, 1996, R.C. 2151.353 was amended, and now reads as follows:

"(G)(1) No later than one year after the earlier of the date the complaint in the case was filed or the child was first placed in shelter care, a party may ask the court to extend an order for protective supervision for six months or to terminate the order. A party requesting extension or termination of the order shall file a written request for the extension or termination with the court and give notice of the proposed extension or termination in writing before the end of the day after the day of filing it to all parties and the child's guardian ad litem. If a public children services agency or private child placing agency requests termination of the order, the agency shall file a written status report setting out the facts supporting termination of the order at the time it files the request with the court. If no party requests extension or termination of the order, the court shall notify the parties that the court will extend the order for six months or terminate it and

that it may do so without a hearing unless one of the parties requests a hearing. All parties and the guardian ad litem shall have seven days from the date a notice is sent pursuant to this division to object to and request a hearing on the proposed extension or termination.

"(a) If it receives a timely request for a hearing, the court shall schedule a hearing to be held no later than thirty days after the request is received by the court. The court shall give notice of the date, time, and location of the hearing to all parties and the guardian ad litem. At the hearing, the court shall determine whether extension or termination of the order is in the child's best interest. If termination is in the child's best interest, the court shall terminate the order. If extension is in the child's best interest, the court shall extend the order for six months.

"(b) If it does not receive a timely request for a hearing, the court may extend the order for six months or terminate it without a hearing and shall journalize the order of extension or termination not later than fourteen days after receiving the request for extension or termination or after the date the court notifies the parties that it will extend or terminate the order. If the court does not extend or terminate the order, it shall schedule a hearing to be held no later than thirty days after the expiration of the applicable fourteen-day time period and give notice of the date, time, and location of the hearing to all parties and the child's guardian ad litem. At the hearing, the court shall determine whether extension or termination of the order is in the child's best interest. If termination is in the child's best interest, the court shall terminate the order. If extension is in the child's best interest, the court shall issue an order extending the order for protective supervision six months.

"(2) If the court grants an extension of the order for protective supervision pursuant to division (G)(1) of this section, a party may, prior to termination of the extension, file with the court a request for an additional extension of six months or for termination of the order. The court and the parties shall comply with division (G)(1) of this section with respect to extending or terminating the order.

"(3) If a court grants an extension pursuant to division (G)(2) of this section, the court shall terminate the order for protective supervision at the end of the extension."

As was noted above, application of this statute would require termination of protective supervision. However, CSB claims that the amendments cannot be applied retroactively to this case, which was pending before the statute was amended. In arguing for application of R.C. 2151.353 as amended, the Carrolls' first contention is that retroactivity is not the issue because CSB moved the court in April 1996, and again on September 18, 1996 to extend protective custody.

Since the latter act occurred after the effective date of the amendments to R.C. 2151.353, the Carrolls argue that the statute is not being applied retroactively, but is merely being applied prospectively. We disagree. In the first place, the events that took place in this case after the amendments do not fit within the explicit terms of the statute. In this context, R.C. 2151.353(G)(1), as amended, states that "[n]o later than one year after the earlier of the date the complaint in the case was filed or the child was first placed in shelter care, a party may ask the court to extend an order for protective supervision for six months or to terminate the order." The statute goes on to say that if such a request is granted, a further extension of six months is allowed, after which time the court is required under to terminate the protective supervision order.

In the present case, the complaint was filed on September 22, 1992. It is not clear from the record when the children were first placed in shelter care. However, assuming for purposes of argument that the shelter care placement occurred after the filing of the complaint, the latest date upon which a motion for extension of protective supervision could have been filed under the amended statute would be September 22, 1993. Since the specific events mentioned in the amended statute took place before the statute was enacted, and no events mentioned in the statute, *i.e.*, the filing of a complaint, or the placing of the children in shelter care, occurred after amendment, the factual scenario of this case plainly does not fit within R.C. 2151.353(G)(1) as amended.[1]

In an attempt to overcome this problem, the Carrolls have attached a May 19, 1995 entry to their brief, apparently likening the entry to the events in amended R.C. 2151.353(G)(1) that trigger the limitation of protective supervision. This agreed entry returned legal custody of Isaiah and Samuel to the Carrolls, subject to a protective supervision order, and terminated the temporary custody of the CSB. Based on this document, the Carrolls argue that the remaining events, including the April 1996 and the September 18, 1996 motions for extension, fit within the parameters outlined in the amended statute. Specifically, the Carrolls argue that the April 1996 motion was filed within one year of the May 1995 entry, as required by the statute. Next, they claim the September 1996 motion for an extension would have been the second and last legally permissible motion for an extension. However, the amended statute explicitly refers to the filing of a complaint or placement of the children in shelter care, not to entries returning custody of children to their parents. Again, we can see no way to match the events in this case with the requirements set forth in the amended statute. Therefore, we cannot view the statute's application to this case as prospective.

---

1. If shelter care placement occurred before the complaint was filed, the latest filing date for an extension of protective supervision would have been earlier than September 22, 1993.

As additional support for their position, the Carrolls have cited two unreported cases involving prospective application of a statute limiting expungement. In both of these cases, expungement of sexual offense convictions was possible at the time of conviction. See *State v. Davenport* (1996), 116 Ohio App.3d 6, 686 N.E.2d 531, and *State v. Poole* (Dec. 22, 1995), Ashland App. No. 1116, unreported, 1995 WL 809875. After the convictions, R.C. 2953.36 was enacted and excluded sexual offenses, among other things, from the convictions subject to expungement under R.C. 2953.61. In refusing expungement, the trial courts relied on R.C. 2953.36, which was in effect at the time the applications for expungement were filed and prohibited expungement. On appeal, both appellate courts affirmed, rejecting the argument that the statute was being applied retroactively. Their reasoning was that since the expungement applications were filed after the effective date of R.C. 2953.36, use of the statute was prospective, not retroactive.

In contrast to the present situation, the applications for expungement in *Poole* and *Davenport* were not part of a ongoing or pending proceeding. Instead, the criminal proceedings had already concluded before the applications were filed. In fact, under R.C. 2953.61, an application for expungement cannot even be filed until three years after a defendant's final discharge if the conviction is for a felony. Thus, after the cases in *Poole* and *Davenport* had ended, the defendants chose to seek a completely separate remedy, and the law in existence at the time they filed for the remedy was applied. This is logical, as an application for expungement is not part of the criminal case, but is a separate, postconviction remedy, is governed by the Appellate Rules, and is likened to a civil proceeding. See *State v. Bissantz* (1987), 30 Ohio St.3d 120, 121, 30 OBR 434, 435, 507 N.E.2d 1117, 1118. Given these factors, we have no quarrel with the results in *Poole and Davenport,* but find them irrelevant to the present situation.

■ Based on the above discussion, we cannot agree that application of the amendments to R.C. 2151.353 would be prospective in this case. With that argument having been eliminated, the question then becomes whether the revised statute may be applied retroactively. In this context, the Carrolls argue that retroactive application is permissible, since R.C. 2151.353 affects procedural rather than substantive rights. Once again, we disagree.

According to the Ohio Supreme Court in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus:

"The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. Upon its face, R.C. 1.48 establishes a threshold analysis which must be utilized prior to inquiry under Section 28, Article II of the Ohio Constitution."

In *Van Fossen*, the Supreme Court said that *only* if this threshold barrier is overcome can a court consider the second issue, *i.e.*, whether the statute is retroactive in violation of constitution requirements. This determination, in turn, requires evaluation of the statute's remedial or substantive nature. *Id.*

After reviewing R.C. 2151.353 as amended, we find no evidence that the legislature intended the statute to apply retroactively. The statute itself is silent on this point. Furthermore, the description of the procedure outlined in the statute negates retroactive intent. As we noted above, R.C. 2151.353(G)(1) specifies a procedure to be followed within a year after the earlier of two events: the filing of a complaint or the placement of children in shelter care. Certainly, at the time of the amendments, the legislature would have been aware of existing case law and of the fact that indefinite numbers of protective supervision motions had been held permissible. Despite this knowledge, the legislature made no attempt to extend the amended statute to pending cases. This could easily have been done, either with a simple statement as to retroactivity or by including pending cases within the procedure set forth in R.C. 2151.353(G)(1).

Accordingly, since the General Assembly did not specify that the amendments to R.C. 2151.353(G) would apply retroactively, our analysis ends with this conclusion. We, therefore, find that the trial court did not err in refusing to apply the amended statute to this case. We also note that *Wilfong v. Batdorf* (1983), 6 Ohio St.3d 100, 6 OBR 162, 451 N.E.2d 1185, on which the Carrolls rely, was overruled to the extent inconsistent with *Van Fossen*. In *Van Fossen*, the Supreme Court made it very clear that no analysis of the remedial or substantive nature of a statute can take place until the threshold inquiry has been resolved in favor of retroactivity.

In light of the preceding discussion, the single assignment of error is overruled, and the judgment of the trial court refusing to terminate protective supervision over Hosea, Isaiah, and Samuel Carroll is affirmed.

*Judgment affirmed.*

WOLFF, J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

I respectfully dissent from the decision of the majority.

Pursuant to Section 4(B), Article IV of the Ohio Constitution, the jurisdiction of the courts of common pleas and their divisions is established by statute. R.C. 2151.353(G) governs the continuing jurisdiction of the juvenile court to extend

temporary protection orders for six months terms after that date. The amended version of the statute that became effective on August 9, 1996, terminates the court's jurisdiction after two six-month extensions have been ordered.

The juvenile court ordered a six-month extension of its temporary protection order on September 23, 1996. It presumably granted a second, which necessarily expired on September 23, 1997. Because the relief that the juvenile court had granted has terminated, this appeal is moot and should be dismissed.

There is some suggestion that the version of R.C. 2151.353(G) which became effective on August 8, 1996 cannot govern the continuing jurisdiction of the juvenile court with respect to extension of a temporary protection order that was issued prior to that date because of the prohibition against retroactive laws in Section 28, Article II of the Ohio Constitution.

A statute can be construed to be impermissibly retroactive in operation only if it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed. *Perk v. Euclid* (1969), 17 Ohio St.2d 4, 46 O.O.2d 60, 244 N.E.2d 475. The rule thus presumes the existence of rights that presently exist. Those which formerly existed but have expired cannot be affected at all, retroactively or prospectively.

If the temporary protection order that the juvenile court issued before August 8, 1996 vested any right in the state or attached any disability to the Carrolls with respect to the Carrolls' two children, the state was automatically divested of that right and the Carrolls were automatically relieved of that disability at the conclusion of the order's term. The same applies to any rights that vested or disability that attached by way of a six month extension entered prior to August 8, 1996. Therefore, because no existing rights, duties, obligations, or disabilities then existed, application of the amended version of the statute to the extension that the court ordered beginning September 23, 1996, does not amount to a form of retroactive application prohibited by Section 28, Article II. The amended version of R.C. 2151.353(G) thus operates prospectively only.