JOURNAL ENTRY AND OPINION
Appellant, Ludmila Kurincic, n.k.a Ludmila Matia, appeals the judgment entries of the Cuyahoga County Common Pleas Court, Domestic Relations Division, which: (1) Found that appellee, Alojz Kurincic, was not in arrears in child support; (2) Found that appellant's new husband, Thomas Matia, was guilty of domestic violence upon the parties' minor child Alexandra; (3) Found that appellant was in contempt of court for interfering with appellee's visitation of their minor child, Arcadia; (4) Ordered that proceeds from the sale of the marital home be distributed to certain creditors; (5) Found that appellant was responsible for a credit card debt. For the following reasons, we affirm.
When appellant filed her complaint for divorce in 1994, she had custody of the parties' three minor children, Antonia, Alexandra and Arcadia. One child, Annetta, was emancipated. The court ordered temporary child support of $715.77/month, effective July 1, 1994.
On June 4, 1995, Antonia became emancipated. The child support was modified to $250 per month for each of two children, effective October 1, 1995. On June 14, 1995, the parties entered into a shared parenting agreement. The parties agreed to modify support retroactive to the date of Antonia's emancipation.
The judgement entry of divorce, dated October 1, 1996, reserved jurisdiction over the division of escrowed proceeds from the sale of the marital home; division of credit card debt and child custody, support and arrearages.
A hearing was held on March 6, 1997. A certified copy of a Support Order Financial Audit Trial, from July, 1994 through February 6, 1997, was admitted into evidence. The audit trial showed that appellee paid $17,084.25 through February 6, 1997. There was no evidence as to whether additional payments were made after February 6, 1997. The court found that appellee owed no child support arrearage.
On April 23, 1997, an incident occurred between the minor child Alexandra, and appellant's new husband, Thomas Matia. As a result of this incident, appellant filed a domestic violence complaint against Alexandra in Juvenile Court.
Appellee filed a complaint for domestic violence in the Domestic Relations Division. The complaint alleged that appellant and Thomas Matia, committed domestic violence against Alexandra on April 23. The temporary protection order, dated May 19, 1997, granted temporary custody of Alexandra to appellee and terminated appellee's support obligation for Alexandra.
After a hearing, the court determined that domestic violence was committed. The Temporary Protection Order would continue in effect for two years. On June 6, 1997, the court granted appellee's motion to stay disbursal of CSEA funds received on behalf of Alexandra. Appellee filed a motion to terminate the wage order on September 8, 1997.
Additional hearings took place in late 1997 and 1998 regarding parental rights and responsibilities concerning Arcadia. The court refused to hear evidence pertaining to Alexandra, because the Juvenile Division had jurisdiction over her. The record does not indicate that CSEA stopped attaching appellee's wages.
The court's final order, dated October 27, 1998, held that the 1995 shared parenting agreement would remain in effect with additional visitation. The parties had equal income, so there would be no child support obligation. The court found no child support arrearage through October 27, 1998.
 I.
Appellant's first assignment of error states:
 THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT DID NOT HAVE CHILD SUPPORT ARREARAGE AS OF OCTOBER 27, 1998.
The audit trial showed that appellee paid $17,084.25 through February 6, 1997. This court calculates that appellee owed $18,365 through February, 1997. (11 months (7-94 to 5-95) x $715 plus 21 months (6-95 to 2-97) x $500 = $18,365). The evidence did not show what payments were made after February, 1997. Therefore, the trial court did not err in finding appellee was not in arrears as of March, 1997.
Appellant contends that an arrearage existed from February, 1997 to October 27, 1998. Appellant asserts that the order to pay child support of $250/month for Arcadia was in effect until October 27, 1998. The trial court could modify this order retroactive to appellee's motion to modify. See Gerlach v.Gerlach (1997), 124 Ohio App.3d 246, 251. Moreover, appellant did not present any CSEA records or other evidence demonstrating an arrearage. The trial court did not err in finding that no arrearage existed.
Accordingly, this assignment of error is overruled.
 II.
Appellant's second assignment of error states:
 THE TRIAL COURT ERRED IN FINDING THAT NEW PARTY DEFENDANT THOMAS MATIA IS GUILTY OF DOMESTIC VIOLENCE.
Appellant asserts that the evidence was not sufficient to grant a temporary restraining order. Any issues concerning the temporary protection order are moot, as that order has been replaced by a civil protection order. See Southworth v.Southworth (Dec. 24, 1998). Cuyahoga App. No. 73525, unreported;In re Carroll (1997), 124 Ohio App.3d 51, 60.
A full hearing was held prior to issuance of the civil protection order. Appellant testified that she and sixteen year old Alexandra had an argument. Alexandra attacked appellant. Appellant attempted to push Alexandra away. Thomas Matia came in and grabbed Alexandra by the hair. Tom pinned Alexandra to the ground. He had his knee on her back and was pulling her head back by the hair. Appellant did not tell him to stop.
Thomas Matia testified that he pinned Alexandra down in the manner described by appellant. He had pinned her down like this two times in the past.
Alexandra testified that Matia pulled her hair so hard that a clump of hair came out. He physically abused her on other occasions and called her names.
The petitioner seeking a CPO must demonstrate by a preponderance of the evidence that petitioner's family member is in danger of domestic violence. Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus.
 "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:
(a) Attempting to cause or recklessly causing bodily injury;
 (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;
 (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code.
R.C. 3113.31(A)(1). There was substantial, competent, credible evidence that Thomas Matia committed acts of domestic violence.
There was also sufficient evidence to find appellant guilty of domestic violence. Domestic violence includes acts of a parent which cause physical or mental injury that harms or threatens to harm the child's health or welfare. See R.C. 3113.31(A)(1)(c), 2151.031(D). The "serious physical harm" referred to in R.C.3113.31(A)(1)(b) includes "any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment". R.C. 2901.01.
Alexandra testified that her mother did not hit her. However, the evidence indicated that Alexandra was depressed and particularly susceptible to mental injury. Thomas Matia testified that appellant yelled at Alexandra and called her names. Appellant did not stop Thomas Matia from pinning down Alexandra in a violent manner. There was some competent, credible evidence from which the court could find that appellant committed domestic violence.
Accordingly, this assignment of error is overruled.
 III.
Appellant's third assignment of error states:
 THE TRIAL COURT ERRED IN FINDING PLAINTIFF-APPELLANT LUDMILA MATIA IN CONTEMPT OF COURT.
In the March 6, 1997 hearing, appellee testified that appellant and Thomas Matia sometimes refused scheduled visitation. A restraining order was issued against appellant and Matia to prevent them from interfering with visitation. Subsequently, appellee filed a motion to show cause why appellant should not be held in contempt for violating the restraining order.
At a hearing on the show cause order, Doris Weingrad testified that she is a licensed social worker. Ms. Weingrad testified that Arcadia repeatedly built a wall around a doll house, "to keep everyone inside safe." Her mother, sisters and Tom Matia were in the house but appellee was not. Appellee refused to participate in Arcadia's therapy. Ms. Weingrad did not like appellee. She felt it was in Arcadia's best interest to keep away from appellee, because of allegations that appellee abused Alexandra.
Appellant testified that she saw appellee molest the children. She said she encouraged Arcadia to visit her father, but then admitted, "why would I encourage her to go with someone that molests children?" Appellant previously agreed to visitation despite the allegations that appellee sexually abused Alexandra.
Appellee testified that when he picks up Arcadia, Arcadia threatens him and says he is not her father. A while later, she is fine. Appellee believes appellant is influencing Arcadia. Appellant will not let Arcadia call him, despite the shared parenting agreement. He was denied visitation twenty times. Appellant had appellee arrested for kidnaping, when appellee had informed her he was taking the child to Cedar Point.
Appellant admitted that she would sometimes run late, and not be at home for the appointed visitation time. She also canceled visitation and took the child on vacation.
Absent an abuse of discretion, we will not reverse a finding of contempt. See State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10
. Parties are not free to defy standing visitation orders. See Holm v. Smilowitz (1992), 83 Ohio App.3d 757, 779 
fn. 16. If a parent fears that a child may be abused during visitation, the parent should seek redress through the courts. See Bailey v. Bailey (Aug. 16, 1994), Franklin App. No. 94APF02-147, unreported; Stapleton v. Holstein (Dec. 10, 1998), Washington App. No. 98CA2570, unreported; James v. James (April 21, 1999), Wayne App. No. 98CA0016, unreported. If the parent denies visitation, he or she risks subjecting him or herself to the contempt powers of the court. Stapleton, supra. The trial court may or may not find that the parent had a good faith belief that he was acting in the best interests of the child, and was justified in not following the trial court's order. Boley v.Boley (Sept. 19, 1994), Holmes App. No. CA 498, unreported.
The trial court did not abuse its discretion in finding that appellant did not have a good faith belief that Arcadia was in danger of abuse by appellee. Appellant entered into the shared parenting agreement after the alleged sexual abuse supposedly occurred. Appellant's credibility was primarily a determination for the trial court. See Tremaine v. Tremaine (1996), 111 Ohio App.3d 703,707.
Accordingly, this assignment of error is overruled.
 IV.
Appellant's sixth assignment of error will be considered out of order. It states:
 THE DOMESTIC RELATIONS COURT ERRED IN ITS ORDER DISBURSING THE ESCROWED FUNDS.
Appellee's attorney held $41,200 in proceeds from the sale of the parties' home in an escrow account. Appellant asserts that the court ordered the funds disbursed before she had an opportunity to cross-examine appellee, who incurred the debts. Appellant does not cite the portion of the record where the court made the premature ruling. No journal entry ordering distribution of the funds was entered until after the trial. If the trial court did make such a ruling, it is a non-final order, subject to modification. See Civ.R. 58(A); Pitts v. Dept. of Transportation
(1981), 67 Ohio St.2d 378, fn. 1; Cleveland v. Trzebuckowski
(1999), 85 Ohio St.3d 524, 526.
Appellant has not demonstrated that the trial court abused its discretion in concluding that the funds should be distributed to the contractors. See Holcomb v. Holcomb (1989), 44 Ohio St.3d 128; Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. Ross v. Ross
(1980), 64 Ohio St.2d 203; Middendorf, supra.
Appellant testified that she had no knowledge of the debt to various individuals. Victor DiChiro testified that the parties owed him $4,900 for excavating their property. Anthony Teherne testified that he loaned appellee $6,500 to build a lake on the marital property. A promissory note specifying 10% interest was entered into evidence. Branislov Bajic testified that he lent appellee $15,000 to improve the marital property. A note was presented, which specified 8% interest.
The court ordered the escrow account be distributed as follows: $4,900 to Victor Dichiro, $19,200 to Branishov Bajc, $9,250 to Anthony Tscherne. This order was fully supported by the testimony, and was not an abuse of discretion.
Accordingly, this assignment of error is overruled.
 V.
Appellant's fourth assignment of error states:
 THE DOMESTIC RELATIONS COURT ERRED IN ORDERING THAT MONEY FROM THE PARTIES' ESCROWED FUNDS BE PAID INTO THE ESTATE OF EDMOND T. WRIGHT.
Appellee testified that Edmund Wright, deceased, had also loaned him money to build the lake. The trial court ordered that the remainder of the $41,200 be paid to the estate of Edmund Wright.
On November 18, 1997, the parties entered into an agreed judgment entry. The funds ordered dispersed to the Estate of Joseph Wright had been returned to appellee's attorney. The parties agreed to split the proceeds equally. This assignment of error is moot because of the agreement of the parties.
Accordingly, this assignment of error is overruled.
 VI.
Appellant's fifth assignment of error states:
 THE DOMESTIC RELATIONS COURT ERRED IN ORDERING THAT THE PLAINTIFF SHALL PAY ALL CREDIT CARD DEBTS.
The $14,000 credit card debt was incurred by appellant during the marriage. Appellant testified that she used the cards solely for the children. Then, she admitted that she also purchased items for herself. Appellant did not present any credit card statements or receipts. She said her husband also used the credit cards.
Appellee testified that he paid appellant for purchases he made on the cards. Appellee testified he did not know about the credit card debt, as his wife kept all the records. Appellee knew that appellant took a second mortgage on the marital home to pay credit card debts. Appellant promised appellee she would pay him back for the second mortgage. Appellant incurred further credit card debt after taking out the second mortgage.
The credibility of the witnesses is primarily for the trial court's determination. Tremaine v. Tremaine (1996), 111 Ohio App.3d 703,707. We can find nothing which causes us to disagree with the trial court's rejection of appellant's credibility. The trial court did not abuse its discretion in finding that appellant would be responsible for the credit card debt. See generally Middendorf v. Middendorf (1998), 82 Ohio St.3d 397,401.
Accordingly, this assignment of error is overruled.
 VII.
Appellant's seventh assignment of error states:
 THE DOMESTIC RELATIONS COURT ERRED IN EXERCISING JURISDICTION AS JUVENILE COURT ALREADY HAD JURISDICTION OVER THE MINOR CHILD ON WHOSE BEHALF THE PETITION FOR DOMESTIC VIOLENCE WAS FILED.
Appellant filed a complaint against Alexandra in Juvenile Court concerning the April 23, 1997 incident. Subsequently, appellee filed his complaint for domestic violence in Domestic Relations Court. The court's temporary protection order granted temporary custody to appellee.
At the domestic violence hearing in Domestic Relations Court, appellant requested that the hearing be removed to Juvenile Court. The judge stated that Judge Chinnock of the Juvenile Court requested the Domestic Relations Court proceed with the hearing. Judge Chinnock stated that he would hold in abeyance any further proceedings regarding the domestic violence aspect of the case.
The domestic relations court found that domestic violence had taken place. The temporary protection order was ordered to remain in effect for two years.
Pursuant to R.C. 3113.31(E)(1). the protection order may:
 (d) Temporarily allocate parental rights and responsibilities for the care of, or establish temporary visitation rights with regard to, minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or visitation rights;
(Emphasis added.) If the Juvenile Court has already granted custody rights, or if a custody case is pending, the Domestic Relations court does not have jurisdiction to award temporary custody in a domestic violence proceeding. See Tischler v. Vahcic
(Nov. 16, 1995), Cuyahoga App. No. 68053, unreported. The Domestic Relations Court does have jurisdiction to award other types of relief. Id; Thomas v. Thomas (1988), 44 Ohio App.3d 6, 8
(Whiteside, P.J., concurring in part and dissenting in part).
In this case, the Juvenile Court had not made any custody determination and agreed to hold the domestic violence issue in abeyance.[1] The Domestic Relations Court did not lack jurisdiction, to award temporary custody. In any case, the Domestic Relations Court had jurisdiction to make a finding of domestic violence and grant other relief.
Accordingly, this assignment of error is overruled.
 VIII.
Appellant's eighth assignment of error states:
 THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION AND VIOLATED THE APPELLANTS'S (sic) DUE PROCESS RIGHTS WHEN IT EFFECTIVELY ELIMINATED THEIR COUNSELS' ABILITY TO CROSS-EXAMINE THE ALLEGED VICTIM OF DOMESTIC VIOLENCE, ALEXANDRA KURINCIC.
Appellant was permitted to cross-examine Alexandra. Some of appellee's objections during the cross-examination were sustained. The judge would not permit Alexandra to answer questions which might incriminate her in the delinquency proceedings.
After the court was adjourned, and the judge left the courtroom, appellant proffered a letters of apology Alexandra wrote to Thomas Matia and appellant. The exclusion of this evidence is at most harmless error. Civ.R. 61. An apology by Alexandra does not necessarily mean that appellant and Mr. Matia did not commit domestic violence. Appellant also proffered a police report of another incident. Appellant never attempted to introduce this document into evidence. Appellant proffered other exhibits which purport to impeach Alexandra's testimony that she had been doing better in school since living with her father. Most of the documents do not refer to incidents which occurred after Alexandra moved in with her father. Appellant never attempted to introduce these school records into evidence.
Appellant had every opportunity to cross-examine Alexandra. The court did not err in excluding any of the proffered evidence, or such error, if any, was harmless.
Accordingly, this assignment of error is overruled.
The decision of the trial court is affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court, Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________________ ANN DYKE ADMINISTRATIVE JUDGE
 CORRIGAN, J., AND KILBANE, J., CONCUR.
[1] At some time subsequent to the domestic violence hearing, the Juvenile Court apparently assumed jurisdiction over the parental rights and responsibilities concerning Alexandra.