TREMAINE, Appellee,

v.

TREMAINE, Appellant.

[Cite as *Tremaine v. Tremaine* (1996), 111 Ohio App.3d 703.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 15589, 14579.

Decided June 14, 1996.

*Mary Beth Caudill,* for appellee.

*Steven C. Scudder* and *Mark C. Anzman,* for appellant.

GRADY, Judge.

This opinion consolidates two cases on appeal that arise from postdecree proceedings in a divorce case. Case No. 14579 is an appeal by Gary Tremaine from an order denying his motion to reduce his spousal support obligation. Case

No. 15589 is an appeal by Gary Tremaine from an order sentencing him to jail for contempt.

Gary Tremaine and Elizabeth Tremaine, now Elizabeth Brothers, each sought a decree of divorce. In a judgment filed on September 14, 1992, the trial court granted both petitions. Gary Tremaine was ordered to pay spousal support in a monthly amount for three years. In an amended entry and decision filed December 1, 1992, the court set the support amount at $667 per month, or $8,004 per year stating, *inter alia:*

"This case is before the court upon defendant's motion for clarification filed October 30, 1992. Defendant correctly points out that the court's September 14, 1992 decision overstated defendant's net disposable income in determining spousal support. The net profit realized by defendant from his business in 1991 was $30,100. In 1990 that figure was $35,300. And in 1989 that figure $18,200.

"Using his most recent figures from 1991, which have a higher degree of relevance because of their recent vintage and the fact that defendant filed a separate return, defendant was liable for about $8,000.00 in federal taxes. He is thus left with about $22,000 in net disposable income from which to cover his stated annual living expenses of $12,000. Plaintiff meanwhile can be expected to earn about $6,000, leaving her $10,000 short of her stated needs.

"The court notes that plaintiff's living expenses are about one third higher than defendant's.[1] It is not the court's intention to use spousal support in this case to create for plaintiff a higher living standard than that enjoyed by the defendant. Rather, it is the court's intention to divide between the parties their combined net disposable income, or $28,000. An award of $8,000 annually achieves this goal."

Gary Tremaine was also ordered to pay his former wife $400 he owed for unpaid temporary support and $150 per month on an obligation of $4,893 for her interest in the marital residence, which was awarded to him. Gary Tremaine was also ordered to maintain life insurance in the amount of $27,000 to assure payment of these obligations.

On June 9, 1993, six months after the decree, Gary moved to reduce his monthly spousal support obligation. Three months after that, on October 7, 1993, Elizabeth filed charges in contempt for Gary's failure to comply with the support and property division orders.

Both motions were referred to a magistrate for hearing. On February 7, 1994, the trial court provisionally adopted the magistrate's recommendation that (1) Gary's motion be overruled, and (2) that Elizabeth's charges be sustained and

---

1. The court had found that Elizabeth's annual living expenses were $16,000.

that Gary be sentenced to serve one hundred twenty days in jail, which he could avoid by complying with the court's orders.

Gary filed objections to the magistrate's report and recommendation, which were overruled on April 25, 1994. After a stay of proceedings for more than a year resulting from Gary's petition in bankruptcy, on November 16, 1995 the court entered a sentence on the contempt it had found. Gary was sentenced to serve sixty days for criminal contempt. He appeals from that order, which was stayed by the trial court pending appeal after seven days had been served.

Gary Tremaine has filed two briefs in these proceedings. The first was filed in case No. 14579 on July 19, 1994. The second was filed in case Nos. 14579 and 15589 on January 22, 1996. The assignments of error set out in them are overlapping and repetitious. For purposes of clarity, they are reformed and restated as follows:

First Assignment of Error

"The trial court abused its discretion when it overruled the appellant's motion to reduce spousal support."

Award of spousal support and modification of award orders are governed by R.C. 3105.18. Subdivision (E) of that section denies the court jurisdiction to modify absent a change of circumstances. Subdivision (F) provides that a change of circumstances includes any increase or decrease in a party's wages, salary or living expenses. However, the change must be one that is substantial and one not contemplated at the time of the prior order. *Leighner v. Leighner* (1986), 33 Ohio App.3d 214, 515 N.E.2d 625.

The burden of showing that modification of spousal support is warranted is on the party who seeks it. *Heltzel v. Heltzel* (Nov. 9, 1990), Trumbull App. No. 89–T–4279, unreported, 1990 WL 174152. In making its determination the court must consider all the relevant factors in R.C. 3105.18(B), and not consider any one in isolation. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197.

The trial courts are granted broad discretion concerning awards of spousal support. Their orders will not be disturbed on appeal absent an abuse of that discretion. " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

In support of his motion to modify Gary showed that Elizabeth's 1993 annual income was $13,274, substantially more than the $6,000 income she had in the year prior at the time of the decree. That change was substantial enough to

warrant modification pursuant to R.C. 3105.18(F). However, whether modification is warranted depends on all the facts and circumstances relevant to the nature and amount of support per R.C. 3105.18(C).

■ There was evidence that Elizabeth's monthly living expenses had increased by $500 since the decree, which would largely consume the increase in her income. The magistrate did not specifically address that issue in his report and recommendation, however, perhaps because Gary Tremaine relied primarily on a claim that his own income had fallen drastically since the decree.

Gary Tremaine owns and operates an auto repair business. It is undisputed that he suffers from heart problems. Gary testified that his health condition had worsened since the divorce, requiring him to engage a mechanic to perform work he had done in the business. Gary testified that the mechanic was paid $400 per week. That cost, along with an increase in the cost of auto parts, had caused his annual net income to decline to $3,000, according to Gary.

The magistrate rejected Gary Tremaine's argument, finding that the evidence he offered to support his reduced income claim is "simply not believable." The magistrate concluded that Gary's annual income had probably increased from $22,000 to $30,000, but recommended no increase in spousal support because none had been requested. The magistrate recommended that Gary's motion be denied. The trial court adopted that recommendation, stating: "Bluntly put, the court finds no credibility in any of the defendant's testimony or evidence."

The credibility of the witnesses and the weight to be given their testimony are primarily for the trial court's determination. *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. In this instance we can find nothing which causes us to disagree with the trial court's rejection of the credibility of Gary Tremaine and the weight to be accorded the evidence he offered. That evidence was inconclusive and incomplete. Furthermore, the magistrate's finding that Gary had concealed and diverted income to his son damages his credibility seriously.

■ Even without a reduction in Gary Tremaine's income, the increase in Elizabeth's income could support a reduction in spousal support. The requirement that Gary pay $8,000 to Elizabeth in order to equalize their incomes is questionable. R.C. 3105.18 does not require a spousal support award that provides the parties with an equal standard of living. *Kaechele v. Kaechele, supra.* There was no objection to the amount of support ordered in relation to that purpose at the time of the decree, however, and none is argued now.

This court has held that a spousal support award must balance the obligee's need for support against the obligor's ability to pay. *Fletcher v. Fletcher* (June 28, 1995), Montgomery App. No. 14726, unreported, 1995 WL 386818. The

increase of Gary Tremaine's annual income from $22,000 to $30,000 increased his ability to pay, but the increase in Elizabeth's annual income from $6,000 to $13,274 reduced her need for support, though it did not fully meet her annual living expenses of $16,000. Nevertheless, some modification of the court's prior order was warranted on this record, and the trial court abused its discretion when it denied Gary Tremaine's motion to modify.

On remand, the trial court may consider whether Elizabeth's annual living expenses have increased, as she claimed and, if they have, whether the increase is such that support should be continued at or near the amount ordered by the court.

The first assignment of error is sustained.

Second Assignment of Error

"The trial court erred when it imposed a sentence of incarceration for the appellant's failure to comply with its spousal support order when the court found that he was unable to comply with its order."

On February 7, 1994, the trial court provisionally adopted the report and recommendation of the magistrate, which found Gary Tremaine in contempt for failing to make *any* payments to his former wife in satisfaction of the spousal support and property division provisions of the divorce decree entered in 1992. The February 7, 1994 order sentenced Gary to a total of one hundred twenty days' incarceration, which was suspended on condition that he pay the arrearages due, open a bank account from which his support payments could be paid, and maintain life insurance for his former wife's benefit, as ordered.

Gary's objections to the February 7, 1994 provisional order were overruled on April 25, 1994. He subsequently filed his petition for bankruptcy. After those proceedings were concluded the court set a hearing for imposition of sentence. A hearing was ultimately held, after several continuances. At the conclusion of that hearing the court stated:

"I will concede that he's proved, to my satisfaction, he has not had the ability to pay the full amount of the court's order as were issued on April 25, 1994. He certainly has not proved that he has had no ability to pay anything whatsoever which is what he has paid since April of 1994.

"And, you know, he's also had the opportunity to maneuver his finances so that his children pay his life insurance policy, but he doesn't follow the Court's orders in keeping [Elizabeth] as beneficiary. And on top of all that, in top of all the support issues, he's living in her house.

"She owns [a] $5,000 interest in that house. She's paying support to him, at this point in time, by subsidizing his living arrangements by—by him not paying

her equity in his real estate. He was awarded the real estate based on him paying her her equity, which was $10,000. The only money she's ever gotten out of this case was what she took at the time of the breakup, about $4,500 bucks, or she's be that much further along.

"MR. ANZMAN: That doesn't consider the tax lien, part of her tax liens on that house, too.

"THE COURT: In effect, she's subsidizing his living expenses, and I just think the whole situation is unjustifiable.

"If he came in here having made $10.00 a week payments, I would have some justification of her not sending him to jail. I don't find that justification. He can't sit there and do absolutely nothing in compliance with the Court's orders and expect me not to send him to jail."

The court sentenced Gary to serve a term of one hundred twenty days in jail, suspending sixty days if he paid all court costs and fines within ninety days. Gary was taken directly to jail on November 16, 1995. He was released on November 22, 1995, pending appeal, after posting a $25,000 bond.

The court's finding that Gary could not pay the full amount ordered does not excuse his failure to pay any part of that amount when, as the court found, he had the resources to do so. His failure to pay any of the monies the court had ordered him to pay almost three years before cannot be justified on this record. Coupled with Gary's failure to maintain a bank account and life insurance, as ordered, and his efforts to conceal his assets, all to the detriment of his former wife, his acts amount to contempt, which the court was authorized to punish as it did.

The second assignment of error is overruled.

### Conclusion

The trial court's order denying appellant Gary L. Tremaine's motion to modify spousal support is reversed, and that matter will be remanded to the trial court for further proceedings.

The trial court's order sentencing appellant Gary L. Tremaine to a term of incarceration for contempt of the court's orders will be affirmed. The trial court's incarceration order filed November 16, 1995 is subject to immediate execution. We note that in this instance the trial court was not authorized to suspend execution of that sentence. Pursuant to R.C. 2705.09, any stay of execution of a sentence imposed in contempt proceedings during the pendency of

an appeal must be ordered by the appellate court. *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 15 OBR 285, 472 N.E.2d 1085.

*Judgment accordingly.*

FAIN and FREDERICK N. YOUNG, JJ., concur.