O P I N I O N
Plaintiff-appellant Dana King appeals from an order of the trial court overruling his motion to terminate his child support obligation as of the date of the eighteenth birthday of the parties' minor child. He also appeals from the trial court's order overruling his motion for termination of his spousal support obligation.
We conclude that the trial court did not abuse its discretion by terminating Dana King's child support obligation as of the date that the child was withdrawn from high school rather than as of the child's eighteenth birthday. We further conclude that the trial court did not abuse its discretion by denying the motion to terminate spousal support. Accordingly, the judgement of the trial court is Affirmed.
 I
Dana King and Carol King were divorced by decree entered by the Clark County Court of Common Pleas on January 4, 1996. Pursuant to the decree, Dana King was required to pay spousal support to Carol King in the sum of $175 per week for seven years. He was also required to pay child support for the parties' unemancipated child, Seth King.
Seth turned eighteen on November 23, 1997. According to the record, between his birthday and February 4, 1998, Seth missed approximately fifteen out of thirty-five school days, and was tardy on sixteen other days. The record reveals that Seth had excuse notes for many of the absences. The record also shows that Seth was enrolled with a full schedule during the school day, and that he was enrolled in both a night school class and a correspondence class. Seth was informed that he could graduate on time if he completed and passed all of his courses. According to the record, Seth took school exams in mid-January, 1998. As of the end of the school semester, in January, 1998, Seth was failing two classes, had an incomplete in two classes, and made D's in three other classes. He was officially withdrawn from school by school officials on February 4, 1998, due to a lack of attendance.
During the interim between the divorce decree and the date of the motion to terminate spousal support, Carol King's salary increased by approximately $15,000. She also received an inheritance from her mother's estate. The inheritance, after payment of estate costs and taxes, included approximately $5,000 in cash and a house valued at $85,000. Dana King's taxable income increased from $200,000 at the time of the divorce to $223,619 at the time of the hearing on the motion to modify.
On February 27, 1998 Dana King filed a motion seeking to terminate his child support obligation and to terminate or modify his spousal support obligation. A hearing was held before the magistrate on April 2, 1998. By entry dated April 10, 1998, the magistrate sustained the motion to terminate child support, with the termination date to be retroactive to February 2, 1998.[1]
The magistrate also overruled the motion to terminate spousal support.
Dana King filed objections to the magistrate's report on April 16, 1998. By entry filed December 9, 1998, the trial court overruled the objections. Dana King appeals from this judgment.
 II
Dr. King's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REFUSING TO TERMINATE THE APPELLANT'S CHILD SUPPORT OBLIGATION RETROACTIVE TO THE CHILD'S EIGHTEENTH BIRTHDAY OF NOVEMBER 28, 1997.
Dana King contends that the trial court erred by failing to terminate his child support obligation retroactive to Seth's eighteenth birthday and by instead making the termination effective as of the date Seth was withdrawn from school. He argues that the child support should have been terminated as of Seth's eighteenth birthday because he did not "continuously attend on a full-time basis any recognized and accredited high school" after that date.
R.C. 3103.03 provides that child support obligations may remain in effect beyond the child's eighteenth birthday "as long as the child continuously attends on a full-time basis any recognized and accredited high school * * *". Dana King contends that since Seth missed so many school days, he did not continuously attend school on a full-time basis. He refers us toLingle v. Lingle (Aug. 10, 1989), Cuyahoga App. No. 55786, unreported, as support for his argument.
In Lingle, the Eighth District Court of Appeals held that child support was properly terminable as of the date of the eighteenth birthday of the parties' minor children because the children were not continuously attending high school after that date. Id. In determining whether the children had continuously attended school, the court stated:
 The record reveals that both boys had opprobrious attendance records, Mark being absent as much as 63 percent, and Joseph being absent as much as 79 percent of the time in a single year. Although Mark was 19-years- old and Joseph was 18-years-old at the time of the hearing, neither boy was close to graduating. Moreover, evidence was adduced that both boys left school for a period of time, and subsequently returned.
 It is clear that a child who voluntarily leaves school and returns has not "continuously" attended within the meaning of R.C. 3103.03. Under the circumstances presented in the record, we agree with the trial court in its finding that neither child "continuously attended on a full-time basis."
Id., citation omitted.
We find Lingle distinguishable from the facts of this case in that Seth did not drop out of school for any period of time, and he was close to graduating. From our reading of the Lingle case, it appears that the appeals court focused on the fact that the children had left school, rather than on their poor attendance record.
In this case, Seth was informed in January, 1998, that he could graduate if he passed all of his classes. He was, in fact, permitted to take his exams in January. Subsequently, the school withdrew him. Based upon the evidence in this case, we find that the record supports a finding that Seth was attending school as a full-time student. Moreover, we are loathe to issue the blanket rule urged by Dr. King; i.e., if a child has a certain percentage of absences from school, he does not meet the "continuously" attending school requirement of R.C. 3103.03. If we were to require a certain attendance record, we might penalize children who are absent because of illness, or other excused absences. In the alternative, the courts would be required to differentiate between absences for good cause and those without good cause; a determination not prescribed by the statute. We conclude that whether a child is continuously attending high school is a matter to be determined on a case-by-case basis. From the record in the case before us, we cannot say that the trial court abused its discretion by finding that child support was properly terminated on the date that the school withdrew Seth from classes rather than on his eighteenth birthday.
Accordingly, Dr. King's First Assignment of Error is overruled.
 III
Dr. King's Second, Third and Fourth Assignments of Error state:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S MOTION TO MODIFY SPOUSAL SUPPORT.
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN HOLDING THAT APPELLANT HAD FAILED TO DEMONSTRATE A SUBSTANTIAL CHANGE OF CIRCUMSTANCES SUFFICIENT TO JUSTIFY A MODIFICATION OF SUPPORT.
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN CONSIDERING EVIDENCE OF THE PLAINTIFF'S INCREASED INCOME IN DETERMINING THE MOTION TO MODIFY SUPPORT.
Dr. King contends that the trial court abused its discretion by overruling his motion to terminate spousal support. In support, he argues that the evidence supported a finding of a substantial change in circumstances justifying termination of his obligation.
"A court that enters a spousal support order in a decree of divorce is authorized to subsequently modify its spousal support order if the decree * * * contains a provision specifically authorizing the court to modify the amount or terms of spousal support and the circumstances of either party have changed since the decree or order was entered." Joseph v. Joseph (1997),122 Ohio App.3d 734, 736, citing R.C. 3105.18(E)(1). "[A] change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). "The circumstances which courts must find have changed to support modification of a spousal support order are those involved in the factors set out at R.C. 3105.18(C)(1)(a) through (n) as they pertain to either party." Joseph, at 736. "The change must be one that is substantial and not contemplated at the time of the prior order." Id., quoting, Tremaine v. Tremaine (1996),111 Ohio App.3d 703, 706.
"The burden of showing that a reduction of spousal support is warranted is on the party who seeks the reduction." Id., citation omitted. "Even after the movant demonstrates a substantial change of circumstances, the burden does not shift to the obligee to demonstrate a continuing need for support or that the existing award is unnecessary or unreasonable." Id., citation omitted. "The burden of persuasion with respect to the modification sought remains with the movant." Id.
At the hearing, Dana King sought to terminate spousal support on the basis that Carol King's income had increased and she had received an inheritance. He introduced the testimony of a real estate appraiser who testified that the house inherited by Carol King had a fair market rental value of $650 to $700 per month. However, the appraiser testified that he did not enter the home, and that his appraisal was based upon his assumption that the house was in average condition. Carol King's testimony contradicted this assumption. Dana King also presented the testimony of a full-time investment counselor who testified that if Carol King invested $79,000, she could earn a return of eight per cent plus two to four per cent for growth, or about $526 per month in income.
Carol King testified that the house is in need of repairs, including a new water heater, and that she is "still paying on the house". She further testified that her standard of living has substantially decreased. She testified that she is driving a car with 140,000 miles on it, and that she now has to shop at Walmart for her clothes.
In regard to the inheritance, we note that there was no testimony to establish that as of the time of the hearing, the house was capable of being sold or rented. In fact, Carol King testified that the house was in need of repairs, and that she was still "paying" on it. Additionally, there was no evidence to indicate that Carol King had failed to make any effort to prepare the house for sale or rental. Therefore, the trial court did not err in finding that, as of the time of the hearing, Dana King failed to prove his claim that Carol King could presently realize rental income or investment income from the house.
As for the increase in income, some increase in a party's earnings over the years can be anticipated. Indeed, Dana King's salary also increased since the time of the divorce, as did the average cost of living. Furthermore, we conclude that Carol King's receipt of $5,000 in cash from her mother's estate does not constitute a substantial change requiring termination of her spousal support, especially in light of the fact that the house was in need of repairs and that she was still "paying" on it.
Because the trial court did consider the factors set forth in R.C. 3105.18(C) in determining whether spousal support is still reasonable and necessary, and because Dana King failed to produce evidence to show that the house was capable of being converted to cash or being rented at the time of the hearing, we cannot say that the trial court abused its discretion by failing to terminate spousal support. However, this conclusion is without prejudice to any motion that Dr. King may make, in the future, to terminate or to modify spousal support, upon the ground that the house Carol King inherited is producing income, or, with reasonable diligence on Carol King's part, would be capable of producing income. Modification or termination of spousal support would likely be appropriate in the future. When Carol King is able to convert the house to rental property, or sell it and invest the proceeds, the potential income from the sale or rental can be used to aid her in meeting her needs.
Dr. King's Second, Third and Fourth Assignments of Error are overruled.
 IV
All of Dr. King's Assignments of Error having overruled, the judgment of the trial court is Affirmed.
GRADY, P.J., and YOUNG, J., concur.
Copies mailed to:
Richard E. Mayhall
Thor G. Ronemus
Hon. Thomas Capper
[1] The magistrate and the trial court found that Seth was withdrawn from school on February 2, 1998. The deposition of the assistant principal from Seth's school provides uncontested evidence that he was not withdrawn until February 4.