JOURNAL ENTRY AND OPINION
Appellant, Susan H. Burma, claims Domestic Relations Court Visiting Judge Stanley M. Fisher erred in ordering a modification of appellee Dr. Gerald Burma's child and spousal support payments because of an involuntary reduction in his income. She argues that it was a voluntary reduction in income, and, as a result, a modification of his payments was improper pursuant to R.C.3105.18 (F). Dr. Burma maintains he anticipated a slight reduction in income in his efforts to expand his practice, but the amount sustained was far greater than predicted and, therefore, involuntary. We agree with the finding of the judge and affirm.
The Burmas were married on April 13, 1973, and the union produced four children: Sally, born September 16, 1973; Patrick, born September 25, 1976; Donald, born September 8, 1979; and Amy, born May 16, 1981. The Burmas were granted a divorce on January 12, 1993. At the time of the divorce, Ms. Burma was a homemaker and Dr. Burma, in private practice as an invasive cardiologist associated with T.M. Sequeira, M.D., Inc, was earning in excess of $800,000 per year. Pursuant to the decision of the trial judge, a shared parenting-plan was implemented and Dr. Burma was ordered to pay $2,500 per month per minor child, or a total of $7,500 per month child support in addition to private school tuition — a deviation from the child support guidelines that the judge deemed necessary to adequately provide for the children. He was also ordered to pay $7,500 per month in spousal support for the term of seven years. The court retained jurisdiction to modify said support as each child became emancipated or at the end of the seven-year term. An appeal followed.
On remand from this court, the trial judge reviewed the distribution of marital assets, which included a reassessment of spousal support and any award of attorney fees, and on March 17, 1995, found, in pertinent part, that the spousal support of $7,500 per month was justified. The judge reasoned that Ms. Burma had become accustomed to a very comfortable lifestyle throughout the eighteen years of marriage, was not college educated, and had an earning capacity between $13,000 and $20,000 per year. The judge further retained jurisdiction to modify this award only upon a substantial change in circumstances of either party. The judge also determined the child support award to be appropriate. He reasoned that although the worksheet sum set forth a monthly child support sum of $13,715, the downward deviated sum of $7,500 was warranted due to Dr. Burma's obligations to pay for the private school tuition and medical expenses for the then three minor children. Dr. Burma appealed the award of life-time spousal support which this Court affirmed. Burma v. Burma (Sept. 29, 1994), Cuyahoga App. No. 65052, unreported.
In February and June of 1996, Dr. Burma filed a motion to modify the parenting order and a motion to modify child support, respectively. On July 11, 1996, he filed a motion to modify spousal support. In response, Ms. Burma filed two written, and one oral, motions to show cause, two motions for lump sum judgment, and two motions for attorney fees.
On December 16-18, 1997, and February 23-24, 1998, evidentiary hearings were held on these motions. Dr. Burma's evidence revealed that following the divorce his original corporate association formed a new entity; Northern Ohio Medical Services, Inc. (NOMS). Because of the changing medical climate and declining reimbursements from private insurance carriers and Medicare, NOMS aligned or merged with other compatible practices and expanded from three to eleven physicians in four locations. Unanticipated losses resulted from several factors; the most significant was the loss of Kaiser Permanente's cardiology referrals and the 1995 purchase of Dr. Carter Wang's practice which required NOMS to repay Medicare over $400,000 in what was classified as over reimbursements to Wang.
Ms. Burma asserted at the hearings that Dr. Burma had anticipated his reduction in income and, indeed, voluntarily decreased his income to expand his business. He has, she contends, diminished his income to increase his wealth. He is the most productive member of the group and elects to receive less income.
On May 4, 1998, the judge entered a judgment finding that a legally tenable change of circumstances had occurred concerning the prior parenting order, spousal support, and child support. As a result, the following modifications were made: 1) all of Ms. Burma's motions were overruled; 2) Dr. Burma's motion to modify parenting order was granted and he was declared the resident parent of Donald Burma and was also to be given credit for any child support overpayments retroactive to the date Donald moved in with him, February 9, 1996; 3) Ms. Burma's spousal support was to be reduced from $7,500 per month, plus poundage, to $4,500, retroactive to July 11, 1996, credit for overpayments calculated and applied; and 4) commencing May 1, 1998 Dr. Burma was ordered to pay child support for Amy in the amount of $3,121.32 per month, plus poundage. In doing so, the judge, in his findings of fact and conclusions of law, made the following determinations:
 The parties were divorced by a decree of this court on January 12, 1993. At the time, Plaintiff earned $854,000.00 per year. He was ordered to pay spousal support in the amount of $7500.00 per month and to pay child support for the parties three (3) children, then all minors, in the amount of $7,500.00 per month plus private school tuition for all three children. By 1996, Plaintiff's income had dropped by 45% to $470,000.00. In 1997, his compensation dropped to $384,000.00, a decline of 55% from his compensation at the time of divorce. Further in 1997, for reasons beyond plaintiff's control, he received only $320,000.00 of the $384,000.00 due him.
 The decline in Plaintiff's income was caused by changes in the medical economy which included changes in Medicare and private insurance reimbursement policies and management costs associated with legitimate efforts to remain competitive in a changing market place. The decline in Plaintiff's income was involuntary and not of Plaintiff's making.
 Since the issuance of the divorce decree, Plaintiff has incurred substantial debt to meet his obligations under the decree and to meet legitimate personal living and business costs and expenses. Defendant, however, has no debt and has enjoyed financial stability since the issuance of the decree. In addition, her ongoing expenses and reasonable needs have decreased. The court finds the Defendant's income to have increased to $5,625.00 for each of 1996 and 1997.
 Law:
 Upon consideration of the testimony, exhibits, written arguments of counsel, case law, and the criteria contained in Ohio revised (sic) Code 3105.18 and 3113.215, it is clear that the change in Plaintiff's circumstances is actual, effects his ability to pay, is not temporary, and is drastic. Plaintiff, therefore, is entitled to a reduction in the amount of his monthly spousal support obligation and to a modification of his monthly child support obligation retroactive to the dates on which Plaintiff filed his motions. Plaintiff should remain obligated for the private tuition for Amy, as required by the divorce decree.
 Plaintiff's spousal support should be reduced from $7,500.00 per month to $4,500.00 per month. Calculated through April 1998 (21 months) based upon an overpayment of $3,000.00 per month, Plaintiff is entitled to a credit of $63,000.00.
 Plaintiff, however, is indebted to Defendant in the amount of $15,000.00 for two (2) months unpaid spousal support, and $12,000.00 for unpaid private school tuition, and deducting that $27,000.00 from Plaintiff's credit leaves a net credit to Plaintiff in the amount of $36,000.00.
 The Court will order Plaintiff to begin paying Defendant the modified spousal support as of May 1, 1998, with the provision that Plaintiff receive credit in the amount of $1500.00 per month for 24 months (24 months x 1,500.00 = $36,000.00), so that beginning May 1, 1998, Plaintiff shall pay Defendant $3,000.00 per month, plus 2% processing charge, through the Cuyahoga Support Enforcement Agency (CSEA) with a wage attachment on his employer for both child and spousal support. Plaintiff's spousal support payments of $4,500.00 per month should resume June 1, 2000. All payments shall be subject to further order of (sic) Court, and all other orders shall remain in full force and effect.
 I.
Ms. Burma's first assignment of error states:
 THE TRIAL COURT ERRED IN FINDING A CHANGE IN CIRCUMSTANCES UPON WHICH TO BASE A MODIFICATION OF SPOUSAL SUPPORT AND CHILD SUPPORT.
Ms. Burma argues that the judge erred in finding that Dr. Burma's financial condition had changed dramatically enough to warrant a modification of the spousal and child support payments. She maintains, pursuant to R.C. 3105.18 (F), a change in circumstances warranting a reduction in support payments is proper only when a party's wages are involuntarily reduced. While she concedes that Dr. Burma's reduction in salary is real, she maintains that it did not amount to a viable change in circumstances warranting a reduction, as this change in income was a voluntary undertaking.
Dr. Burma maintains that although some losses were expected due to the mergers associated with his new practice, the amount of money lost by each of its members, due to unforseen costs, was never contemplated, and thus involuntary.
R.C. 3105.18 provides in part:
 (E) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after May 2, 1986, and before January 1, 1991, or if a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
* * *
 (F) For purposes of divisions (D) and (E) of this section, a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses.
In Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140, the Ohio Supreme Court determined that trial courts are granted broad discretion concerning awards of spousal support, and, as a result, when reviewing a decision regarding the modification of spousal support, then alimony, a reviewing court should disturb the trial court's decision only upon a showing of an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's actions were arbitrary, unreasonable or unconscionable. Id.
The burden of establishing the necessity of an entitlement to a modification of spousal and/or child support rests on the party seeking the modification. Tremaine v. Tremaine (1996), 111 Ohio App.3d 703,676 N.E.2d 1249. See, also, Murphy v. Murphy (1984),13 Ohio App.3d 388, 389, 469 N.E.2d 564. An inquiry into a change in circumstances must date back to the time of the original order. Bacharowski v. Bacharowski (Sept. 11, 1997), Cuyahoga App. No. 71164, unreported. Further, to warrant a modification, "the change must be one that is substantial and not contemplated at the time of the prior order." Tremaine, supra.
 Likewise, in order to obtain a modification of a child support obligation, the obligor must establish a change in gross income which would result in a new support amount, as recalculated pursuant to the statutory support guidelines, which is more than ten percent less than the amount as set forth in the existing order. R.C. 3113.215 (B) (4).
Bacharowski, supra.
Ms. Burma relies, primarily, upon two cases to support her position: Shanley v. Shanley (1989), 46 Ohio App.3d 100,546 N.E.2d 477; and Haynie v. Haynie (1984), 19 Ohio App.3d 288,484 N.E.2d 750. Haynie is a case with similar facts to the case subjudice, the husband was a physician with a doctorate and at the time of divorce was earning $100,000 a year. The following year he chose to enter into an affirmation for private practice and his salary was reduced to $30,000 per annum. The trial court denied, and this court affirmed the denial of his motion to modify child and spousal support, then alimony, due to the fact that the husband's choice to enter into the private practice was voluntary in nature. Id.
The Shanley case involved a sportscaster who lost his job at a television station resulting in a substantial change in income. Despite, however, the income drop from $134,641 to $17,000, Shanley managed to relocate to California and purchase a $435,000 house and a brand new Mercedes. These purchases, Shanley maintained, were to keep up his Hollywood image. In denying his motion for modification, this court stated that his inability to pay did not stem from a loss of employment, or a change in circumstance, but was merely a direct result of his lavish lifestyle. Shanley, supra.
In the instant case, after careful review of the record, it is clear that this case is distinguishable from those relied upon by Ms. Burma. Dr. Burma offered credible testimony regarding: his economic misfortunes, see Dixon v. Dixon (Mar. 9, 1995) Cuyahoga App. No. 66997; unreported, that he was not voluntarily underemployed, English v. Rubino (April 4, 1996), Cuyahoga App. No. 68901, unreported: or living a life of excess, Shanley,supra. Further, unlike Haynie, Burma did not voluntarily decrease his income by changing jobs and job environments. As the judge noted, Dr. Burma was merely responding to the changing nature of the medical industry in an attempt to maximize his income. See,Medoff v. Medofff (June 15, 1995), Cuyahoga App. No. 67434, unreported, (a physician who failed to adapt to changes in the health care industry by modifying his business practices to maximize his income was found to be voluntarily underemployed).
If the present lowering of income is only temporary, as noted by Ms. Burma, and Dr. Burma eventually begins to earn monies equivalent to his original earning capacity, she should then file a motion to modify for an increase in support based on Dr. Burma's recovered good fortune.
We do not find that the judge abused his discretion in modifying the child and spousal support and find this assignment of error not well taken.
 II.
Ms. Burma's second assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO FIND THE PLAINTIFF-APPELLEE IN CONTEMPT OF COURT AND TO AWARD REASONABLE ATTORNEYS FEES.
Ms. Burma contends, pursuant to R.C. 3105.21 (C), that the judge should have held Dr. Burma in contempt of court for the nonpayment of his child and spousal support obligations as well as the private school tuition, and required him to pay all reasonable attorney fees in association with said contempt.
Dr. Burma admits that he was non-compliant with the court orders concerning both child and spousal support during a two month period, however, this non-compliance was necessitated because he was unable to pay as he did not receive a paycheck during that time. He further points out that once his overpayments to Ms. Burma are taken into consideration, even with his admitted delinquency, overall he was ahead in his payments.[1]
In a contempt proceeding "great reliance is placed upon the discretion of the trial judge." Lindsay v. Curtis (1996),115 Ohio App.3d 742, 686 N.E.2d 313, quoting Denovchek v. TrumballCty. Bd. of Commrs. (1988), 36 Ohio St.3d 14, 16,520 N.E.2d 1362, 1364. A reviewing court will not disturb a lower court's ruling concerning contempt absent an abuse of discretion.Lindsay, supra. Moreover,
 [a] party cannot be held in contempt if it was not in their power to obey the court's order. Courtney v. Courtney (1984), 16 Ohio App.3d 329. If a parent has made a good faith effort to pay support, the parent cannot be held in contempt for non-payment of support. Id. see Allen v. Allen (1988), 59 Ohio App.3d 54. The burden is on the parent-obligor to prove he is unable to comply with the support order. Allen, supra, Pugh v. Pugh (1984), 15 Ohio St.3d 136.
English, supra.
After careful review of the record, it is clear that the judge did not abuse his discretion in finding that Dr. Burma was not in contempt. Since the inception of the divorce, Dr. Burma has been diligent and timely in his payments of his obligations. He came to court acknowledging he had been derelict in his payment of both child and spousal support in July and August of 1997, but offered proof to the court that during those months he did not receive a paycheck. With regard to his support payments concerning their daughter Amy's private school tuition, Dr. Burma testified that he misunderstood that it remained his obligation because of an out-of-court agreement regarding support obligations between he and Ms. Burma. The judge determined, subsequent to the modification, that once the monies and disbursement thereof were recalculated, it was Dr. Burma who was owed money.
Accordingly, since the record reveals the judge did not abuse his discretion in finding that Dr. Burma had an inability to pay his spousal support payments, this assignment of error is not well taken.
Judgment affirmed.
It is ordered that the appellee recover from appellant his costs herein taxed.
This court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Division of Domestic Relations, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and TIMOTHY E. McMONAGLE, J., CONCUR
 _________________________ JUDGE ANNE L. KILBANE
[1] In a stipulation to this court Dr. Burma admitted that the judge erred in his calculation of his overpayments concerning child support. He was delinquent for the sum of $29,951.88, based upon a recalculation of his support payments for Amy from the date of his motion for modification. This amount should have been credited against his $36,000 in overpayments for spousal support, resulting in a net overpayment sum of $6,049.12. The parties involved have already resolved this matter.