JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Rebecca Chasko appeals the trial court's failure to rule on her motion for contempt, denial of a second motion for contempt, failure to award attorney fees, and the modification of appellee Robert J. Chasko's spousal support obligation. She assigns the following errors for our review:
 "I. The trial court erred in failing to rule upon appellant's first motion to show cause filed on November 26, 2002 and in not finding appellee in contempt of court and ordering him to pay arrearages."
 "II. The trial court erred in denying appellant's motion to show cause filed on October 20, 2003 and in not finding appellee in contempt of court."
 "III. The trial court erred in not awarding appellant attorney fees."
 "IV. The trial court erred in modifying downward appellee's spousal support obligation." *Page 3 
 {¶ 2} Having reviewed the record and pertinent law, we affirm the decisions of the trial court. The apposite facts follow.
 {¶ 3} The parties were divorced on October 15, 2003 after being married for thirty-four years. Prior to the final divorce decree being entered, the court issued a temporary support order on March 20, 2001, which provided that the husband would pay the sum of $300 a month in spousal support plus a two percent processing charge. The temporary order also ordered the husband to pay the mortgage, the equity line of credit to H.F.C., the unsecured equity line of credit to H.F.C., the real estate taxes, and homeowner's insurance.
 {¶ 4} The divorce proceeded to trial before a magistrate on March 20, August 26, 27, 28, 29 and 30, 2002. Prior to the magistrate issuing the decision, the wife filed a motion to show cause on November 26, 2002, arguing the husband failed to abide by the terms of the temporary order. The magistrate's decision was filed on January 28, 2003; both parties filed objections. The trial court overruled all of the objections and a divorce decree was journalized on October 15, 2003.
 {¶ 5} The final divorce decree found that the husband was current on his ordered obligations. It also increased the husband's spousal support to $1,000 per month, plus the 2% processing fee. The court ordered the wife to refinance the marital home in a sufficient amount to pay off the marital debt. If the wife was unable to obtain adequate financing, she was to sell the marital home. *Page 4 
 {¶ 6} On October 20, 2003 the wife filed another motion to show cause. Attached to this motion was an affidavit in which the wife alleged the husband was not current in his temporary support payments. The husband also filed a motion to show cause and several motions to modify his support obligations. A hearing was conducted on these motions on January 19, 2005, July 21, 2005 and July 22, 2005. The magistrate's decision was filed on January 17, 2006. It denied both parties' motions to show cause, and granted the husband's motion to modify by decreasing his spousal support from $1,000 to $300 per month effective November 5, 2003 until June 10, 2004. The magistrate further reduced the spousal support commencing June 11, 2004 to $204 per month.
 {¶ 7} Both parties filed objections to the magistrate report. The trial court denied the objections and adopted the magistrate's report.
 Final Order {¶ 8} As a brief aside, we note the husband moved to dismiss this appeal due to a lack of a final appealable order. He argues that the divorce decree was not final and appealable because a Qualified Domestic Relations Order ("QDRO") had not yet been issued. However, our review of the record indicates that on January 18, 2006, QDRO judgment entries were entered for the husband's First Energy retirement benefits and the wife's benefits under the Federal Employees Retirement System. Therefore, we have jurisdiction to consider this appeal.
 November 26, 2002 Motion to Show Cause *Page 5 {¶ 9} In her first assigned error, the wife argues the trial court erred by failing to rule on her November 26, 2002 motion to show cause regarding the husband's failure to comply with the magistrate's temporary order. She contends that between the time the hearings on the final divorce decree ended and the final divorce decree was issued, the husband failed to pay the ordered temporary support, the two equity lines of credit, the mortgage, and real estate taxes.
 {¶ 10} An appellate court's standard of review of a trial court's contempt finding is abuse of discretion.[1] In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable.[2]
 {¶ 11} Although the wife contends the trial court erred by failing to rule on the November 2002 motion, the record indicates the wife failed to bring this motion to the magistrate's attention at the commencement of the January 19, 2005 hearing regarding outstanding motions. The magistrate listed the outstanding motions it was considering. The wife never mentioned the November 26, 2002 motion.
 {¶ 12} Nonetheless, we find no prejudicial error occurred. The wife's affidavit attached to her October 20, 2003 motion for show cause lists the same *Page 6 
arguments regarding the husband's noncompliance with the temporary order as the November 2002 motion.[3] In fact, in the January 17, 2006 magistrate's decision, the magistrate notes, "Plaintiff filed on October 20, 2003, her Motion to Show Cause (#155566), alleging that Defendant has not complied with certain obligations on the temporary order and/or the Magistrate's Decision."[4] Therefore, no prejudicial error resulted from the trial court's failure to rule on the prior motion as the same issues were again recited in the October 20, 2003 motion.
 {¶ 13} The majority of the testimony by the parties at the hearing concerned whether there was compliance with the temporary order. The evidence indicated the husband's financial situation took a drastic turn once he was involuntarily retired from First Energy as part of the company's reduction in its work force. The husband moved to Nevada in order to obtain full time employment with Progressive Insurance, but was terminated after one year. He has been unable to obtain employment with the earning potential equivalent to what he earned at First Energy. As the magistrate noted:
 "The testimony shows that defendant not only lost his longstanding employment, but actually did think that his part-time *Page 7 employment could perhaps turn into a lucrative position. However, it appears the days of his earning $60,000 to $100,000 per annum are most likely over in this current economic climate."[5]
 {¶ 14} The husband was also unable to access his pension fund to pay the ordered obligations because his assets were frozen. Therefore, the change in the husband's financial circumstances provided him a valid defense regarding his inability to pay the support. A party cannot be held in contempt for failing to pay support, if the party proves he was unable to pay.[6]
 {¶ 15} In addition, during the time the temporary support was in effect, the wife was receiving workers' compensation benefits that she failed to disclose to the court prior to the order being entered. She received a lump sum of $11,577.21 in December of 2000 from workers' compensation for an injury she received in 1995. She was also awarded prospective payments in the amount of $1,566 every four weeks until February 11, 2003. Given this evidence, we conclude the trial court did not abuse its discretion in denying the wife's motion to show cause.
 {¶ 16} Therefore, given the workers' compensation benefits and the husband's drastic decrease in income, we conclude the trial court did not abuse its discretion in refusing to find the husband in contempt for failure to comply *Page 8 
with the temporary order. Accordingly, the wife's first assigned error is overruled.
 October 20, 2003 Motion for Contempt {¶ 17} In her second assigned error, the wife contends the trial court erred by denying her motion for contempt filed on October 20, 2003 for the husband's failure to comply with the court's decision filed on October 15, 2003. She argues the husband should have been required to use part of his gross severance package in the amount of $58,259 towards his spousal support obligations. She also contends he has failed to pay the $1,000 per month spousal support amount ordered by the trial court in the final divorce decree.
 {¶ 18} We note the motion for show cause was filed a mere five days after the trial court's final divorce decree was entered. This did not give the husband adequate time within which to comply with the order. Although the $1,000 per month was to apply retroactively to January 1, 2003, the order was not imposed until five days prior to the motion for cause was filed. The magistrate made the following findings:
 "The filing of this Motion to Show Cause was actually within five days of the Final Judgment Entry of Divorce. As in most divorce decrees, there are mutual obligations that both parties need to comply with which, in fact, facilitates each party being able to comply with their obligations. Plaintiff completely, by her timing in the filing of her Motion to Show Cause, not only was uninterested in any Court ordered obligation she was to perform, but also completely without any standing to file a motion against defendant for his failure to comply with the Magistrate's Decision, as she herself had filed objections to this *Page 9 same Magistrate's Decision and was well aware that objections to the Decision were filed by the defendant as well. Additionally, Plaintiff had obligations which she failed to do which had a direct impact on Defendant's ability to comply with the spousal support order. Therefore, the Plaintiffs Motion to Show Cause should be denied."[7]
 {¶ 19} Although we disagree with the magistrate's finding that the wife did not have standing to file the motion as the motion was filed five days after the judgment entry, the timing of the filing weakens her argument that contempt occurred. Pending the court's adoption of the magistrate's report, both parties had filed objections to the magistrate's report. Requiring the husband to comply with the decision pending review by the court, while the wife did not comply with the magistrate's order, would be inequitable. The wife was to either obtain refinancing to pay off the mortgage and the accompanying marital debt, or sell the home. The wife failed to do either. Therefore, the debts continued to remain outstanding.
 {¶ 20} Due to the fact the divorce was not final, the husband's assets were still frozen, therefore, besides the minimal salary he was making, he had no outside funds from which he could pay the $1,000 per month of spousal support ordered by the magistrate. The husband was involuntarily terminated from his job with First Energy as part of the company's reduction in its work force. He has been unable to find comparable employment. *Page 10 
 {¶ 21} Moreover, the court recognized the original spousal support imposed in its October 2003 order was excessive, because it later granted the husband's motion to modify his support. The court decreased the husband's $1,000/month obligation to $300/month commencing November 2003. Given these circumstances, we conclude the trial court did not abuse its discretion by adopting the magistrate's recommendation to deny the wife's October 20, 2003 motion to show cause.
 {¶ 22} We note we are barred from reviewing the wife's contention that the husband's severance package should have been used to pay his accrued arrearage because the wife raised this argument in her motion for a new trial she filed on October 27, 2003. The trial court denied the motion on January 16, 2004; the wife has failed to file a direct appeal from the trial court's denial.[8] Therefore, because this is an issue that could have been brought on direct appeal, res judicata bars our review of this issue. Accordingly, the wife's second assigned error is overruled.
 Attorney Fees {¶ 23} In her third assigned error, the wife contends the trial court erred by failing to award her attorney fees for the work performed in filing the motions to show cause. *Page 11 
 {¶ 24} R.C. 3109.05(G) requires the trial court to impose reasonable attorney's fees on a party who is found in contempt of court for failure to make court-ordered support payments. The decision to award attorney's fees is a matter within the sound discretion of the trial court.[9]
Absent a clear abuse of discretion, a reviewing court will not reverse the judgment of the trial court.[10]
 {¶ 25} In the instant case, the husband was not found to be in contempt of court. Therefore, pursuant to R.C. 3109.05(G), attorney fees were not required to be imposed. Accordingly, the wife's third assigned error is overruled.
 Modification of Spousal Support {¶ 26} In her fourth assigned error, the wife contends the trial court erred by decreasing the husband's spousal support obligation. The court decreased his spousal support from $1,000 to $300 per month effective November 5, 2003. The court then further reduced the spousal support commencing June 11, 2004 to $204 per month.
 {¶ 27} We will not disturb a trial court's determination on domestic relation matters, such as spousal support, absent an abuse of discretion.[11] An abuse of *Page 12 
discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable decision.[12]
 {¶ 28} R.C. 3105.18(E) states, in pertinent part, that the trial court may modify the amount or terms of a spousal support order upon a determination that "the circumstances of either party have changed[.]" A "change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses."[13] The burden of showing that a modification in spousal support is warranted is on the party who seeks it.[14] Here, pursuant to R.C. 3105.18, the magistrate noted the husband's decreased income from the time of the parties' divorce.
 "The testimony shows that defendant not only lost his outstanding employment, but actually did think that his part-time employment could perhaps turn into a lucrative position. However, it appears the days of his earning $60,000.00 to $100,000.00 per annum are most likely over in this current economic climate. Defendant has relied on the finality of his divorce and the completion of certain obligations by plaintiff, also to his financial detriment. * * * Defendant has been harmed by the distribution of his marital assets/debts being in limbo as well as his pension benefits. Defendant's spousal support is modifiable as to amount and needs to be modified to a reasonable amount which defendant can meet as well as maintain some contribution toward his obligations as well as *Page 13 his own expenses. Defendant's finances has put him in a whole different lifestyle compared to plaintiff being able to maintain the marital residence, which was not even to occur pursuant to the decree."[15]
 {¶ 29} These findings are supported by the husband's testimony in which he stated that in February 2003, he was involuntarily retired from First Energy after being employed there for 32 years. At the time he was also working part-time at Progressive Insurance in order to earn extra income to comply with the temporary support order. He moved to Nevada in order to receive full-time employment with Progressive. However, in May 2004, he was terminated from the position. Since that time, he has been unable to find comparable employment. He has worked at a casino for approximately $10.50 an hour, and currently works as an electrician for $12 an hour for approximately $1,600 a month. Once the $1,000 spousal support amount is deducted, he is left with $600 a month to live on.
 {¶ 30} He stated once he was terminated from First Energy he was unable to keep up with the support order because his assets were frozen by the divorce decree. He used the money he received from his severance package to facilitate his move to Nevada, bought a car so that he could travel to work, and paid some of his own bills. Because his credit had been damaged by the accrued marital debt, he had to pay cash for everything. He currently lives in a small one room *Page 14 
efficiency in Nevada. He has had to give up his medical retirement package with First Energy because he could no longer afford to pay the premium.
 {¶ 31} The wife on the other hand, has increased her salary since the divorce. She currently works for the Federal Government as a dental hygienist with the Veteran's Administration, where she earns approximately $38,000. She has also retained possession of the marital home.
 {¶ 32} Based on this evidence, we conclude the trial court did not abuse its discretion in adopting the magistrate's recommendation to decrease the husband's spousal support. Accordingly, the wife's fourth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and MARY EILEEN KILBANE, J., CONCUR.
[1] State ex rel. Celebrezze v. Gibbs (1991), 60 Ohio St.3d 69;State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
[3] The husband filed a separate motion to dismiss the first assigned error based on the wife's failure to renew her motion after the court entered its October 15, 2003 judgment. The motion was denied and the issue referred to the panel hearing the appeal. We conclude the October 20, 2003 motion operated to renew the prior motion to show cause.
[4] Magistrate's Decision, January 17, 2006, at 2.
[5] Magistrate's Decision, January 17, 2006 at 2.
[6] Pugh v. Pugh (1984), 15 Ohio St.3d 136; Courtney v. Courtney
(1984), 16 Ohio App.3d 329,334; Baker v. Mague, Cuyahoga App. No. 82792,2004-Ohio-1259.
[7] Magistrate's Decision, January 17, 2006.
[8] Once the QDRO orders were entered on January 18, 2006, the motion regarding the denial of the motion for new trial became appealable as all the issues regarding the property which were brought up in the trial were finalized.
[9] Rand v. Rand (1985), 18 Ohio St.3d 356, 359.
[10] Birath v. Birath (1988), 53 Ohio App.3d 31, 39.
[11] Booth v. Booth (1989), 44 Ohio St.3d 142, 144; Kucmanic v.Kucmanic (1997), 119 Ohio App.3d 609, 612.
[12] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[13] See R.C. 3105.18(F).
[14] Joseph v. Joseph (1997), 122 Ohio App.3d 734, 736; Tremaine v.Tremaine (1996), 111 Ohio App.3d 703, 706.
[15] January 17, 2006, Magistrate's Decision, at 2-3. *Page 1