[Cite as *Vian v. Vian*, 2013-Ohio-4560.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MERCER COUNTY**


CHRISTINA VIAN,

    PLAINTIFF-APPELLANT,          CASE NO. 10-13-05

    v.

DANIEL VIAN,                    **O P I N I O N**

    DEFENDANT-APPELLEE.


**Appeal from Mercer County Common Pleas Court
Domestic Relations Division
Trial Court No. 11-DIV-025**

**Judgment Affirmed**

**Date of Decision: October 15, 2013**


**APPEARANCES:**

    *William E. Huber* **for Appellant**

    *John A. Poppe* **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-appellant Christina Vian ("Christina") appeals the February 25, 2013, judgment entry of the Mercer County Common Pleas Court, Domestic Relations Division, granting Christina a divorce from defendant-appellee Daniel Vian ("Daniel"), distributing the parties' debts, and denying her request for spousal support.

{¶2} The facts relevant to this appeal are as follows. On June 7, 2011, Christina filed a "Complaint for Divorce" alleging that she married Daniel on November 13, 1982, and that the parties were incompatible.[1] (Doc. 3).

{¶3} On June 29, 2011, Daniel filed an answer wherein he agreed that the parties were incompatible. (Doc. 12).

{¶4} On December 8, 2011, Daniel was deposed. (Doc. 32).

{¶5} On April 24, 2012, and July 9, 2012, the divorce came before the magistrate for a final hearing. At the final hearing both parties testified, as did the parties' adult daughter, and a licensed auctioneer who appraised the parties' personal property. At the hearing, the parties stipulated that they were incompatible, and that they owned no real property. In addition, the parties agreed to an equal distribution of Daniel's pension with Minster Machine. The magistrate

---

[1] The Complaint for divorce was filed as "without children." (Doc. 3). The parties actually had three children together, but at the time of the filing of the complaint, the youngest was 26 years old. All three children were emancipated.

was left to determine the issues of whether spousal support was appropriate, the allocation of marital debt, and the distribution of the parties' personal property.

{¶6} On July 23, 2012, the parties submitted written closing arguments. (Docs. 56, 57).

{¶7} On August 21, 2012, the magistrate issued a decision, making findings of fact and conclusions of law. (Doc. 59). With regard to spousal support, the magistrate listed and analyzed the requisite factors that are used in determining whether spousal support is appropriate pursuant to R.C. 3105.18(C)(1) and ultimately decided that the parties were "on equal standing." (*Id.*) Therefore the magistrate determined spousal support was not appropriate in this case. (*Id.*) With regard to the allocation of marital debt, the magistrate decided that Daniel was responsible for debts he had paid such as the American Budget loan. (*Id.*) The magistrate found that Christina would be responsible for the credit card debt, finding that it was her separate debt rather than marital debt. (*Id.*) The parties' personal property was distributed pursuant to an itemized list. (*Id.*)

{¶8} On October 26, 2012, Christina filed objections to the magistrate's decision, specifically challenging the magistrate's decision not to award spousal support, and the magistrate's finding that the credit card debt was separate debt rather than marital. (Doc. 64). Christina argued that the credit card debt should be

marital, and that Daniel should have received half of that debt. (*Id.*) On November 7, 2012, Daniel filed a response. (Doc. 65).

{¶9} On February 8, 2013, the trial court filed a "judgment entry on objections to the magistrate's decision." (Doc. 66). In the entry the court stated that it had undertaken an "independent review of the evidence." (*Id.*) Ultimately the court concluded that the magistrate appropriately addressed the issue of spousal support and therefore overruled Christina's objection as to that issue. (*Id.*) However, the court did find that the magistrate had inappropriately determined the credit card debt to be Christina's separate debt rather than marital debt. (*Id.*) The court thus found Christina's objection to be "for good cause." (*Id.*) Nevertheless, upon the court's review of the evidence, the court determined that the magistrate had equitably divided the property and debts of the parties. (*Id.*) Thus the court did not find the property/debt had been inequitably divided, and the court overruled Christina's request to have Daniel share in the credit card debt. (*Id.*)

{¶10} On February 25, 2013, the final judgment entry and decree of divorce was entered, granting the divorce, denying Christina spousal support, and allocating the credit card debt to Christina. (Doc. 68).

{¶11} It is from this judgment that Christina appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ABUSED IT'S [sic] DISCRETION IN THE DIVISION OF DEBTS IN ALLOCATING THE ENTIRE CREDIT CARD DEBT TO PLAINTIFF-APPELLANT.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ABUSED IT'S [sic] AND WAS ARBITRARY IN DENYING THE PLAINTIFF-APPELLANT SPOUSAL SUPPORT.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT FAILED TO CONDUCT AN INDEPENDENT REVIEW AS TO ISSUES RAISED AND [sic] PLAINTIFF-APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION.**

*First Assignment of Error*

{¶12} In Christina's first assignment of error, she argues that the trial court abused its discretion in its division of marital debt. Specifically, Christina contends that the trial court erred in allocating the entire credit card debt to her.

{¶13} It is well-settled that trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Moore v. Moore*, 3d Dist. No. 17-03-04, 2003-Ohio-3320, ¶ 20. "Notably, the '[a]llocation of marital debt is inextricably intertwined with the division of marital property.'" *Id*. at ¶ 21, quoting *DeWitt v. DeWitt,* 3d Dist. Marion App. No. 9-02-41, 2003-Ohio-851, ¶ 10 (citation omitted). "Because the division of marital debt is 'inextricably intertwined' with the division of marital property, * * * the same factors are relevant in fashioning an equitable distribution of marital debt." *Elliott v. Elliott*,

4th Dist. No. 05CA2823, 2005-Ohio-5405, ¶ 25, citing *Samples v. Samples,* Washington App. No. 02CA21, 2002-Ohio-544.

{¶14} A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Jackson v. Jackson*, 3d Dist. No. 11-07-11, 2008-Ohio-1482, ¶ 15, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131 (1989). "The mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion." *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph two of the syllabus. An abuse of discretion is more than a mere error; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

{¶15} In this case, the marital property to be divided consisted of Daniel's pension, his 401(k), a life insurance policy, three vehicles, and various items of personal property. The retirement funds and the life insurance amounted to $66,061.40, and the parties agreed to split those funds evenly via a qualified domestic relations order.[2] The parties' personal property was appraised, and it

---

[2] We computed this number by adding Daniel's pension, $56,566.46, Daniel's 401(k), $8,719.11, and a life insurance policy, $775.83. (Pl.'s Exs. 12, 13, 14). The actual qualified domestic relations order purporting to divide these amounts equally was not included in the record.

was valued at $4,535.00. The personal property was distributed in an itemized list, and was not objected to by Christina.[3]

**{¶16}** In the division of the parties' vehicles, the parties agreed that Christina would keep the parties' 2000 Chevy Blazer, which she valued at $4,400, and Daniel would keep a 1990 Chevy Silverado truck, and a 1988 Buick Regal,[4] valued at $2,200, and $1,200 respectively.[5]

**{¶17}** Totaling all of the parties' assets together (the retirement funds, the personal property and the vehicles), the parties had assets of approximately $78,396.40 that were divided in the divorce.

**{¶18}** The marital debt to be divided by the court consisted of debt on two credit cards, and debt/bills that Daniel had paid since the divorce proceedings began for which he was seeking reimbursement. The credit card debt involved two credit cards in Christina's name. The first credit card was a Juniper MasterCard with a balance of $1,291.77 as of August 5, 2011, and the second was a Chase credit card with a balance of $3,881.25 as of August 8, 2011. (Plaintiff's

---

[3] In that itemized property distribution, Daniel received personal property valued at $2,390, and Christina received personal property valued at $1,580. The itemized list contained items designated as "gifts" valued at $565.00, and it is not clear which party these items were being distributed to. There were, however, items outside of the list of personal property to be distributed that Christina already had in her possession, such as a camera, a Nook (e-reader), an electric roaster, a jewelry box, jewelry, and a fire safe. (Tr. at 33, 70).

[4] Christina testifies that the Buick is a 1988. Daniel stated in his answer that it was a 1991. The magistrate used the 1988 figure, so we reference it herein.

[5] These are the values Christina assigned to the vehicles in her complaint. Daniel valued the Blazer at $4000, the Silverado at $1000, and the Regal at $300. (Doc. 14).

Exs. 16, 17). Christina entered statements reflecting these amounts into the record at the final hearing.[6]

**{¶19}** The marital debt Daniel testified to consisted of a debt that the parties owed to American Budget for Christina's vehicle, which was approximately $1,072, and bills for phone, cable, and utilities that the parties incurred while Christina was residing in the marital residence.[7] (Tr. at 56-57); (Tr. at 114-117). Daniel requested that he be repaid for half of the bills as he had already paid them.[8] (Tr. at 114-117); (Exs. C, D, E).

**{¶20}** The total debt of the parties when considering the credit cards, the American Budget loan, and the marital bills amounted to $6,729.47. Of this amount, Daniel established that he had paid $1,556.45. The parties sought to have the court divide the debt.

**{¶21}** In the magistrate's decision, the magistrate stated the following with regard to the marital debt, and the credit card debt specifically.

> **With regard to marital debt, each party shall be responsible for any debt incurred in their own name. Therefore, Daniel is responsible for the loan he paid to American Budget and shall**

---

[6] The statements included in the record reflecting these balances were apparently the first statements available after the divorce was filed. (Plaintiff's Exs. 16, 17). Christina listed these credit cards as having similar balances in her complaint under the parties' monthly installment payments. (Doc. 3). There was no testimony of Christina making charges on the cards after the divorce was filed, and there was no evidence of such charges in the statements in the record.

[7] The only other debt testified to by the parties was a loan on a truck Daniel bought after this case began, which he acknowledged he was wholly responsible for.

[8] Exhibit C, a bill from Frontier for phone service, amounted to $73.95. Exhibit D, a bill from Dominion for Gas amounted to $156.77. Exhibit E, a bill from Time Warner Cable amounted to $253.73. *See* (Exs. C, D, E); (Tr. at 115-117). Exhibit F showed the receipts for payment to American Budget Company for Christina's car, totaling approximately $1,072.00 for five payments.

> **not be reimbursed. The debt was marital debt and is now paid in full. The undersigned will not divide prior debt that has previously been paid. By the same token, Christina shall pay her credit card debt. The debt is listed in her sole name. It is her separate debt. Her testimony was refuted with regard to what the credit cards were used. It is not marital debt. Defendant shall be responsible for any of the marital debt for utilities when Plaintiff was living in the marital residence. Plaintiff will not reimburse him.**

(Doc. 59).

{¶22} Christina filed objections to the magistrate's decision on the marital debt distribution, contending that the credit card debt was not separate debt. When the trial court reviewed her objections, the trial court agreed with her, stating the following.

> **Upon the court's independent review of the evidence, the court concurs with Plaintiff's argument that the credit card debt solely in the name of plaintiff was incurred during the marriage of the parties, and that the evidence is insufficient to establish that credit card debt as being plaintiff's separate debt. To that extent, the court finds that plaintiff's first objection is for good cause.**

> **However, upon the court's independent review of the evidence in the record, the court determines that the magistrate has equitably divided the property and debts of the parties, and although the credit card debt solely in the name of plaintiff should have been found by the magistrate to be a part of the marital debts, nevertheless, that credit card debt should be allocated to plaintiff as her sole obligation as between the parties. Therefore, plaintiff's objection to the Magistrate's Decision that as a marital debt, the credit card debt solely in the name of plaintiff should be divided equally between the parties is not well-taken, and the same is hereby denied.**

(Doc. 66).

{¶23} On appeal, Christina contends that the trial court abused its discretion in dividing the marital debt, as she claims the division was unequal and therefore inequitable. Christina argues that when the trial court found her objection "for good cause" and found that the credit card debt was marital debt, the trial court should have divided the marital debt equally. Christina further argues that there was nothing to support the trial court's unequal distribution of the marital debt.

{¶24} As previously stated the parties' total debt was $6,729.47. Thus if the debt was divided equally, each party would be responsible for $3,364.735. Daniel established that he had paid $1,556.45 of the parties' debt, leaving him with another $1,808.285 to pay if the debt was divided equally.

{¶25} At the outset, we would note that the amount Christina argues as inequitable, $1,808.285, only amounts to a 2.532% inequity in the total distribution of the parties' marital assets and marital debt.[9] While the distribution in this case might not amount to a perfectly "equal" mathematical distribution as Christina is seeking, the Ohio Supreme Court stated in *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95, (1988), "[e]quitable need not mean equal." As equitable does

---

[9] This percentage was computed by dividing the alleged inequity ($1808.285) by total assets ($78,396.40) minus marital debt ($6,729.47) [1,808.285 / (78,396.4 – 6,729.47)]. If marital debt is not subtracted from the assets, the inequity would be 2.3065%.

not mean equal, it is unlikely such a small percentage would rise to an abuse of discretion.

{¶26} However, looking into the facts of this case, it is possible that the trial court offset amounts in the marital property distribution to satisfy the extra marital debt given to Christina. For example, the trial court may have considered the fact that Christina received a vehicle valued *at least* $1,000 more than the vehicles received by Daniel in the property distribution.[10] The trial court may also have considered the fact that Christina received items of personal property outside of the appraised personal property that was distributed by agreement such as jewelry, an electric roaster, a Nook e-reader, and a fire safe.[11] (Doc. 59).

{¶27} Based on this evidence, there are things in the record that could account for the trial court's decision to find that the property and the debt had been offset in the distribution and that the debt and property had therefore been divided equitably, if not precisely equally. As there is some competent credible evidence that the award is equitable we cannot find under these circumstances that the trial court abused its discretion.

{¶28} Accordingly, Christina's first assignment of error is overruled.

---

[10] If Daniel's valuations of the vehicles were used instead, Christina's vehicle was worth $2,700 more than the vehicles he received in the distribution of property. (Doc. 14). Splitting the difference between those two valuations, Christina would have received $1,850 more in value, or just over the amount of inequity she is claiming.

[11] While Daniel received more value from the division of personal property, the items taken by Christina were not appraised and not included in that valuation. Thus we have no way of knowing how valuable those items were.

*Second Assignment of Error*

**{¶29}** In Christina's second assignment of error, she argues that the trial court abused its discretion in denying Christina's request for spousal support. Specifically, Christina claims that Daniel's income exceeds Christina's, and that some of the magistrate's findings when discussing whether to award spousal support were not supported by the record.

**{¶30}** "Trial courts are granted broad discretion concerning awards of spousal support." *Muckensturm v. Muckensturm*, 3rd Dist. No. 5-11-38, 2012-Ohio-3062, ¶ 16, citing *Tremaine v. Tremaine*, 111 Ohio App.3d 703 (2d Dist.1996). Their orders will not be reversed on appeal absent an abuse of that discretion. *Id.* When applying an abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Blakemore*, *supra*.

**{¶31}** Revised Code 3105.18 governs the trial court's award of spousal support and requires the court to consider fourteen factors set forth in R.C. 3105.18(C)(1), which reads,

> **(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:**
>
> **(a)  The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;**

**(b)   The relative earning abilities of the parties;**

**(c)   The ages and the physical, mental, and emotional conditions of the parties;**

**(d)   The retirement benefits of the parties;**

**(e)   The duration of the marriage;**

**(f)   The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;**

**(g)   The standard of living of the parties established during the marriage;**

**(h)   The relative extent of education of the parties;**

**(i)   The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;**

**(j)   The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;**

**(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;**

**(l)   The tax consequences, for each party, of an award of spousal support;**

**(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;**

**(n) Any other factor that the court expressly finds to be relevant and equitable.**

{¶32} In the magistrate's decision in this case, the magistrate specifically listed each factor and made findings under each of those factors, finding only factor "f" to be inapplicable. In so doing, the magistrate found that "the parties are on equal standing. Other than the fact that Daniel has recently earned more money than Christina, when taking into consideration all other factors, the undersigned finds they are on equal footing. Christina's health is better than Daniel's. Both parties have equivalent earning abilities, etc." (Doc. 59). Thus the magistrate declined to award Christina spousal support.

{¶33} Christina objected to the magistrate's decision regarding spousal support, and the trial court overruled that objection, stating,

> **[t]he court finds that the issue of spousal support is appropriately addressed by the magistrate in paragraph 63 of the findings of fact wherein the factors contained in R.C. 3105.18(C)(1) are addressed. The court has made an independent review of the evidence and determines that the findings of the magistrate which relate to each of the statutory factors are consistent with the evidence and that those finding[s] support the conclusion contained in paragraph 8 of the decision portion of the Magistrate's Decision that no spousal support shall be paid by either party to the other.**

(Doc. 66).

{¶34} On appeal, Christina contends that several of the magistrate's findings were unsupported by the record and that the trial court should have awarded her spousal support to essentially equalize the parties' incomes. We will

discuss briefly the evidence presented with regard to the factors of R.C. 3105.18(C)(1).

{¶35} With regard to factor (a), the facts of this case established that Daniel earned approximately $18.50 an hour, or $38,000 per year before overtime, which amounted to at least a few thousand dollars per year. Christina earned $18,968 in 2011.

{¶36} With regard to factors (b), (h), (j), and (m), Daniel does not have a high school diploma, as he only went to school through the ninth grade. The record does not make clear whether Christina graduated from high school. Neither party contributed to the education, training, or earning ability of the other party during the marriage, nor was there lost income or production capacity as a result of marital responsibility. Moreover, there is nothing differentiating the ability of the parties to secure comparable employment based on their skills or education.

{¶37} With regard to factor (c), Christina testified that she was in good health. Daniel testified that he suffered from depression and from high blood pressure, for which he received medication.

{¶38} With regard to factor (d), Daniel had retirement benefits through Minster Machine Company, but those benefits were being evenly split between the parties by agreement.

{¶39} With regard to factor (e), the parties were married for over 28 years. They were married on November 13, 1982, and separated on May 22, 2011.

{¶40} Factor (f) is not relevant as there were no minor children.

{¶41} With regard to factor (g), the parties testified that throughout their marriage they lived paycheck to paycheck. The parties did not often go out to eat or attend entertainment events. During the entirety of the parties' marriage, they took no more than three vacations, all to Tennessee, and all in the final years of their marriage.

{¶42} With regard to factor (i), the parties' assets and liabilities were discussed in the previous assignment of error. The assets were split equitably and there are no other liabilities other than those discussed previously.

{¶43} With regard to factor (k) Christina did not provide evidence that she was considering acquiring further training or education.

{¶44} Factor (l) relates to tax consequences, and said consequences were stated to be considered by the magistrate.

{¶45} In sum, the parties maintained a "paycheck to paycheck" standard of living throughout the course of their marriage. Christina put on evidence that there was a disparity in the parties' income, but she did not establish a greater earning ability in Daniel, or a contribution to Daniel's earning ability throughout their marriage. Based on the entirety of the evidence presented in the record, the

magistrate's examination of the requisite factors, and the trial court's independent review and analysis, we cannot find that the trial court abused its discretion in declining to award Christina spousal support. Accordingly, Christina's second assignment of error is overruled.

*Third Assignment of Error*

**{¶46}** In Christina's third assignment of error, she argues that the trial court erred by not conducting an independent review and analysis of Christina's objections to the magistrate's decision. Specifically, Christina contends that the trial court did not independently review her objections to the issues discussed in the first two assignments of error.

**{¶47}** "Pursuant to Rule 53(D)(4)(d) of the Ohio Rules of Civil Procedure, when objections are filed to a magistrate's decision, the trial court must independently review the objected matters to decide if the magistrate properly determined the factual issues and appropriately applied the law." *Gilleo v. Gilleo*, 3d Dist. No. 10-10-07, 2010-Ohio-5191, citing *Brandon v. Brandon,* 3d Dist. No. 10-08-13, 2009-Ohio-3818, ¶ 31. When examining whether a trial court has conducted the required independent review of a magistrate's decision, appellate courts "generally presume regularity in the proceedings below, and, therefore, we generally presume that the trial court conducted its independent analysis in reviewing the magistrate's decision." *Mahlerwein v. Mahlerwein,* 4th Dist. No.

04CA15, 2005-Ohio-1835, ¶ 47. Therefore, the party who asserts that the trial court did not conduct such a review bears the burden of affirmatively demonstrating the trial court's failure to perform its duty. *Id.; Figel v. Figel,* 3d Dist. No. 10-08-14, 2009-Ohio-1659, ¶ 2.

{¶48} In this case, Christina contends that the trial court did not conduct an independent review because it made no additional factual or legal findings. Despite Christina's arguments on appeal, when reviewing Christina's objections, the trial court stated, "[t]he court has reviewed the pleadings, the exhibits admitted into evidence, the transcript, and the arguments of the parties, and has made an *independent review* of the matter." (Emphasis added.) (Doc. 66). In addition, the court referred to its "independent review" of the evidence with respect to both the first and second objections, and stated yet another time that it had made an independent review in the same entry. Thus the court was clearly conscious of its duty to independently review the evidence, as it stated four times that it had done so in the six paragraphs of the entry.

{¶49} Moreover, with regard to the court's review of Christina's objection to the credit card debt allocation, the court actually reasoned that Christina's objection was "for good cause," indicating an independent review of the record to determine the credit card debt was, in fact, marital rather than separate.

{¶50} Furthermore, as to the trial court's review of Christina's objection to spousal support, the trial court specifically referenced the paragraph wherein the magistrate carefully addressed spousal support and stated that the magistrate's findings were consistent with the evidence, indicating the court had actually conducted the independent review of the record it stated it had. Based upon this, we cannot find that the court failed to conduct an independent review and analysis. Accordingly, Christina's third assignment of error is overruled.

{¶51} For the foregoing reasons Christina's assignments of error are overruled and the judgment of the Mercer County Common Pleas Court, Domestic Relations Division, is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**/jlr**

**ROGERS, J., concurring separately.**

{¶52} I concur with the result reached by the majority. I write separately to comment on Appellant's third assignment of error which alleged that the trial court had failed to conduct an independent review of the magistrate's decision.

{¶53} Accepting the trial judge at his word, and noting the trial court's findings as to the objections to the magistrate's decision, this court is compelled to overrule the assignment.

{¶54} I find it curious, however, that the magistrate's signature appears on the final judgment entry, above that of the trial court judge. It is the decision of the judge that is to be embodied in a judgment entry, and not the recommendations or opinions of the magistrate. If the magistrate's approval is intended as a ministerial act to confirm that the entry contains all that it should, then counsel's signature, below that of the judge, would be sufficient to provide such confirmation. However, if the magistrate's prior approval of stated findings is *required* before the trial judge will sign an entry, I would personally, and professionally, find the procedure to be offensive.

{¶55} At oral argument, counsel stated to this court that in all cases, after the judge's ruling on objections, the judgment entry must be submitted to the magistrate for approval before the judge will sign it. Considering that procedure along with the fact that the magistrate's signature appears above that of the judge on the judgment entry, it is understandable that counsel might wonder who is having the final word on the case – the magistrate or the judge.

{¶56} Further evidence of this magistrate's apparent misunderstanding of a magistrate's limited authority is evident in her use of language such as "[t]he

undersigned will not divide prior debt[,]" "[t]he plaintiff shall[,]" and "the parties shall[,]" as well as her inclusion of the phrase "IT IS SO ORDERED" in bold type and capital letters at the end of her magistrate's decision.  (Docket No. 59, p. 10). It would appear that the magistrate actually believes that she is rendering final orders in the case, rather than recommendations to the trial judge.

{¶57} It is no wonder then that attorneys and parties feel the magistrate is making the decisions, the trial judge is rubber stamping those decisions, and that language to the effect that the judge has made an independent review of the transcript and evidence is nothing but regurgitation of the magic words from Civ.R. 53.

**/jlr**